**PAID**

FILED
CLERK, U.S. DISTRICT COURT
08/28/2025
CENTRAL DISTRICT OF CALIFORNIA
BY ___DVE___ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

Peter Strojnik
7847 N. Central Ave
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com

# IN THE UNITED STATES DISTRICT COURT

# CALIFORNIA CENTRAL DISTRICT

| PETER STROJNIK, | Case No. 8:25-cv-01944-JVS-(JDEx) |
|---|---|
| Plaintiff | |
| v. | **COMPLAINT** |
| KYLIE SCHUYLER and DOUGLAS HODGE, husband and wife, | |
| Defendants. | |

## INTRODUCTION AND NOTICE OF PARALLEL PROCEEDING

On March 21, 2024, Plaintiff filed a simple breach of contract complaint against Le Nid USA, Inc. and Le Nid Consortium International in Maricopa County, Arizona. *See Strojnik v. Le Nid Usa, Inc.*, MCSC No. CV2024-006019. Thereafter, Plaintiff amended the original Complaint to add Kylie Schuyler, Douglas Hodge as party defendants. On August 11, 2025, the Maricopa County Superior Court dismissed Schuyler and Hodge for lack of personal jurisdiction. Plaintiff now brings this action against Ms. Schuyler and Mr. Hodge in California's Central District Court because Defendants reside in Laguna Beach and are within the personal territorial jurisdiction of this court.

The MCSC action no CV2024-006019 remains pending against other defendants on the date of this Complaint.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Peter Strojnik is a single man residing in Phoenix, Arizona.

2. Defendants Kylie Schuyler ("Schuyler") Douglas Hodge ("Hodge") are wife and husband residing in Laguna Beach, California.
3. This Court also has diversity jurisdiction pursuant to 28 U.S.C. §1332 based on the following:
   A. Plaintiff is a citizen of the state of Arizona; and
   B. Defendants are citizens of the State of California; and
   C. The amount in controversy, including (1) compensatory and punitive damages, (2) attorney's fees, and (3) avoidance of fraudulent transfers greatly exceed the statutory threshold of $75,000.00.
4. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because Defendants reside within this District and further because they orchestrated the wrongs alleged in this Complaint from this district.

## GENERAL ALLEGATIONS

### A. The Crèmily Project

5. Schuyler developed and owned a recipe for tasty Crèmily French Frozen Yogurt and related food products ("Crèmily Products") and desired to bring them to the retail market ("Crèmily Project").
6. Schuler lacked the necessary funds to fund the Crèmily Project.
7. Hodge agreed to fund the Crèmily Project.
8. Schuyler and Hodge lacked the experience in the food manufacturing, marketing and distribution business; therefore, in or about early 2020's, they engaged one Steven Delaportas *a/k/a* Steven *Dellaportas* (hereafter "Delaportas") to organize and manage the Crèmily Project.
9. Schuyler was principally in charge of supervising Delaportas with respect to Crèmily Products' manufacture, quality control, packaging and presentation, while Hodge, as funder, was principally in charge of supervising Delaportas' business and financial management of the Crèmily Project.
10. In or about 2022, Defendants leased a large office space at 6991 East Camelback Road in Scottsdale, Arizona as headquarters. Upon information and belief, the space

2

was leased in the name of Schyler-controlled company Le Nid Consortium International, Inc. ("LNCI").

11. In late 2022, Delaportas recruited Plaintiff to provide strategic business services to LNCI.

12. Delaportas represented to Plaintiff that, inter alia:

   A. He was hired by Defendants Schuyler and Hodge to help them in the manufacturing, marketing, sales and distribution of Crèmily Products; and

   B. He (Delaportas) was the CEO of LNCI and Le Nid USA, Inc.;

   C. Schuyler and Hodge are husband and wife; and

   D. Hodge funded the Crèmily Project with a $1B ($1,000,000,000) fund.

13. Following initial discussions and price negotiations, Delaportas confirmed to Plaintiff that Schuyler and Hodge authorized him to execute a consulting agreement between LNCI Plaintiff.

14. Immediately prior to the execution of the Consulting Agreement, however, Delaportas advised Plaintiff that Schuyler and Hodge required the Consulting Agreement to be made between Plaintiff and Le Nid USA, Inc. and not between Plaintiff and LNCI "for accounting purposes".

15. Delaportas further advised Plaintiff that the Consulting Agreement with Le Nid USA, Inc. was financially secure because the entire Crèmily Project was funded by Hodge with $1B.

16. Delaportas did not disclose that Le Nid USA, Inc. was a shell company with no ability or intent to pay the $10,000.00 monthly retainer fee to Plaintiff.

17. Plaintiff reasonably relied on Delaportas' representations, concealment, and non-disclosures.

18. Based on Delaportas' representations and assurances that Le Nid USA, Inc. was able to fulfill its contractual obligations, Plaintiff entered the Consulting Agreement effective January 1, 2023. (Exhibit 1)

19. The Consulting Agreement was an "on call" retainer agreement at $10,000 per month. The term was for one year with automatic one year extensions unless either party gave the other notice of non-extension no later than October 31 of the then

3

effective term. The Consulting Agreement was to be "governed and construed in accordance with the laws of the State of Arizona".

20. Plaintiff was instructed to submit his invoices to LNCI.

21. In late 2022 and into 2023, Delaportas brought on some of his current employees, hired new employees, influencers, contractors, organized a full recording studio with cameras, lights, actors and actresses, he negotiated contracts with third party vendors and contractors, and managed various Le Nid / Cremily companies into what became known as the Crèmily – Le Nid Enterprise[1].

22. During this period, Plaintiff timely and competently provided services and strategic guidance as requested.

23. Plaintiff submitted invoices to LNCI as instructed, and LNCI made payments to Plaintiff each month between January and June 2023.

B.  **Breach of the Consulting Agreement, Settlement of the Breach, and Breach of the Settlement Agreement.**

24. During the Summer of 2023, a conflict developed between Delaportas and Hodge. Upon information and belief, Delaportas was accused of mismanagement and waste of Hodge's funding.

25. Hodge demanded a restructuring of the work force, management and operations of LNCI, and as a result, LNCI significantly reduced its workforce and operational costs.

26. Effective July 1, 2023, Hodge instructed Delaportas to cease making retainer payments to Plaintiff.

27. At this time, Hodge was not an officer, director or authorized person working for or on behalf of Le Nid USA, Inc. or LNCI.

28. Delaportas complied with Hodge's instructions and payments to Plaintiff stopped.

---

[1] The Crèmily – Le Nid Enterprise consisted of at least the following persons and entities all of whom were involved in the Crèmily Project: Defendant Schuyler; Defendant Hodge; Steven Delaportas *aka* Steven Dellaportas; Le Nid, Inc.; Le Nid USA, Inc., a defunct Florida corporation; Le Nid USA, Inc., a New Mexico Corporation; Le Nid Consortium International, Inc. ("LNCI"); Le Nid Brands, Inc.; Le Nid Bottling, Inc.; Le Nid Creamery San Diego, Inc.; Le Nid Bottling California, Inc.; Le Nid Technologies, Inc.; Le Nid Intellectual Property, Inc.; Crèmily , Inc. and, upon information and belief, Le Nid Asia, Inc. and Superfrutas Beverage Company, Inc.

4

29. On October 31, 2023, the Consulting Agreement by its terms automatically extended to December 31, 2024.

30. On November 21, 2023, Plaintiff met with Delaportas at Matt's Big Breakfast on Camelback Road to discuss a resolution of Le Nid's breach of the Consulting Agreement.

31. Delaportas stated to Plaintiff that Schuyler and Hodge wanted to settle Plaintiff's claim for breach of contract and related claims.

32. At the meeting, Delaportas admitted for the first time that he ceased making payments to Plaintiff at Hodge's direction.

33. At that meeting, Delaportas admitted and acknowledged that the Consulting Agreement remained in effect, that Le Nid USA, Inc. breached it, and that Plaintiff was due the monthly retainers from July of 2023 to December 31, 2024 in the sum of $180,000.00.

34. Plaintiff and Delaportas were unable to reach a settlement at this time.

35. On December 4, 2023, Plaintiff met with Delaportas and his executive secretary Alejandra Coy at LNCI's offices to discuss settlement of claims between Plaintiff on one hand and Schuyler, Hodge, Le Nid USA, Inc., Delaportas and others on the other.

36. At this meeting, a settlement was reached.

37. As soon as the settlement agreement was agreed to, it was breached.

38. On October 31, 2024, the Consulting Agreement was by its terms automatically renewed to December 31, 2025.

39. On June 17, 2025, Plaintiff gave Defendants notice of his option to not extend the Le Nid Consulting Agreement for another year.

**C. Fraudulent Conveyance of Schuyler's, LNCI's and Le Nid USA, Inc.'s Assets.**

40. On February 27, 2024, LNCI granted to Schuyler a UCC lien encumbering all its assets as documented in UCC Financing Statement No. 2024-000-0849-0 filed with the Arizona Secretary of State.

41. On May 30, 2024, (1) **LNCI**, (2) Le Nid Intellectual Property, Inc., (3) Le Nid Brands, Inc. (4) Cremily, Inc., (5) Le Nid Holdings, Inc., (6) Superfrutas Beverage Company, Inc. (7) Le Nid Technologies, Inc. , (8) Le Nid Bottling, Inc., (9) Le Nid, Inc. (10) **Le**

5

**Nid USA, Inc.,** (11) The Cremily Foundation, (12) Le Nid Asia, Inc., and (13) **Kylie Schuyler** liened all their assets to CT Corporation Systems, "as representative", as documented in UCC Financing Statement No. 2024-002-4478-3 filed with the Arizona Secretary of State.

42. Two days later, on Saturday, June 1, 2024, Delaportas and the entire Crèmily – Le Nid Enterprise vacated the offices at 6991 E. Camelback in Scottsdale and ceased operations.

   D. **Le Nid USA, Inc. (NM) was a mere Instrumentality and Alter Ego of Schuyler, Hodge and Delaportas**

43. There was such a unity of interest and ownership between Le Nid USA, Inc. and Schuyler that it no longer existed as a separate entity because, at the time of the execution of the Consulting Agreement, Le Nid USA, Inc.:

   A. Was not authorized to conduct business in Arizona; and
   B. Failed to properly maintain corporate records; and
   C. Other than contracting with Plaintiff, it conducted no known business; and
   D. It had no paid employees; and
   E. It was insolvent to pay monthly retainer to Plaintiff; and
   F. Permitted Hodge, who was not its officer, director or equity holder and was not authorized to conduct its affairs, to instruct Delaportas to (1) enter the Consulting Agreement with Plaintiff in late 2022, and (2) instructed Delaportas to stop making retainer payments to Plaintiff effective July of 2023; and
   G. Was not the true beneficiary of the Consulting Agreement; the true beneficiaries were LNCI, Schuyler, Hodge and Delaportas; and
   H. Authorized Steven Delaportas to hold himself out as its CEO under the assumed name *Dellaportas* when in fact, Delaportas was not the CEO and his true name is not *Dellaportas.*
   I. Is a member of the so called Cremily – Le Nid Enterprise and share Schuyler as the common officer and director and Delaportas as the actual control person.

44. Failure to disregard the corporate veil would result in fraud or injustice because, at the time of the execution of the Consulting Agreement, all of the following was true:

6

A. In the last moment prior to the execution of the Consulting Agreement between Plaintiff and LNCI, Hodge instructed Delaportas to structure the consulting agreement between Plaintiff and Le Nid USA, Inc. and to tell Plaintiff that this would be done "for accounting purposes" only; and

B. Hodge and Delaportas induced Plaintiff to enter the consulting agreement allegedly for "accounting purposes" when in fact the purpose was to shield Hodge, who was not an officer, director or equity holder, from liability; and

C. Defendants knew that Le Nid USA, Inc. was insolvent and had no intent or ability to pay the monthly retainers to Plaintiff; and

D. Unless the corporate veil of Le Nid USA, Inc. is disregarded, Defendants Schuyler and Hodge would benefit from Plaintiff's services and Plaintiff would be harmed by the breach because Le Nid USA, Inc. was/is insolvent.

45. Schuyler, Hodge and Delaportas did not use Le Nid USA, Inc. "for accounting purposes" as stated to Plaintiff, but to ensure that Plaintiff would not be able to recover against Le Nid USA, Inc. because it had no assets.

46. Schuyler, Hodge and Delaportas knew that Le Nid USA, Inc. was unable to pay monthly retainers under the Consulting Agreement and had no intention of performance.

47. Disregarding the corporate separateness of Le Nid USA, Inc. is necessary to prevent injustice and fraud because the observance of its corporate form would and did confuse Plaintiff and frustrate his efforts to protect his rights, while allowing individual Defendants to evade liability.

48. Defendants have committed fraud sufficiently to permit the piercing of corporate veil to reach Schuyler because, inter alia, Schuyler and Hodge insisted that the Consulting Agreement be entered between Plaintiff and Le Nid USA, Inc. knowing that Le Nid USA, was insolvent and unable to perform under the Consulting Agreement.

**COUNT ONE**
Common Law Fraud, Concealment and Non-Disclosure

49. Plaintiff realleges all allegations made elsewhere in this Complaint.

7

50. Delaportas, working at the direction of and in concert with Schuyler and Hodge, made the following representations to Plaintiff:
    A. That he (Delaportas) was the CEO of LNCI and Le Nid USA, Inc.; and
    B. That Hodge funded the Crèmily Project with a $1B ($1,000,000,000) fund; and
    C. The Consulting Agreement had to be made between Plaintiff and Le Nid USA, Inc. and not between Plaintiff and LNCI "for accounting purposes"; and
    D. The Le Nid USA, Inc.'s performance was secure and guaranteed with Hodge's funding of $1B.
51. Defendants and Delaportas also actively concealed the material fact that Le Nid USA, Inc. was insolvent and had no ability or intention to fulfill its contractual obligations.
52. Defendants and Delaportas made explicit representations about Le Nid USA, Inc.'s ability to make payments from Hodge's $1B funding but withheld the material fact that Hodge had unfettered ability to withhold funding.
53. The above representations, concealment of material facts and partial representations were false.
54. Defendants and Delaportas knew that these representations and concealments of material facts were made, and that that the representations and concealments of fact were false.
55. The representations and concealment of material facts were made with the intent to induce Plaintiff's reliance to execute the Consulting Agreement.
56. Plaintiff justifiably relied on the misrepresentations and concealment of material facts.
57. Had Plaintiff been aware that these representations, concealments of material facts, and partial representations were false, he would not have entered the Consulting Agreement without further assurances of Le Nid USA, Inc.'s ability to perform.
58. Plaintiff has been damaged by Defendant's false representations, concealment of facts, and partial disclosures because in July of 2023, Hodge instructed Delaportas to stop making payments to Plaintiff.

8

59. Plaintiff has been damaged in the amount of unpaid monthly retainers from July 2023 to December 2025 in the amount of no less than $300,000.00.
60. Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market and to secure Plaintiff's assistance in their endeavor. Accordingly, the fraud committed by any of them imposes liability on the other two.
61. Defendants were guilty of oppression, fraud or malice; therefore, pursuant to California Civil Code §3294(a), Plaintiff seeks imposition of punitive damages.

## COUNT TWO
Promissory Fraud – Fraud in the Inducement

62. Plaintiff realleges all allegations elsewhere in this Complaint.
63. Defendants and Delaportas fraudulently induced Plaintiff to enter into the Consulting Agreement with Le Nid USA, Inc. as alleged above.
64. Also as alleged above, Defendants and Delaportas intended to and did induce Plaintiff to enter the Consulting Agreement with Le Nid USA, Inc. by making promises they did not intend to keep since Le Nid USA, Inc was unable to perform.
65. Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market and to secure Plaintiff's assistance in their endeavor. Accordingly, the promissory fraud committed by any of them imposes liability on the other two.
66. Defendants are guilty of oppression, fraud or malice; therefore, pursuant to California Civil Code §3294(a), Plaintiff is entitled to punitive damages.
67. Plaintiff has been damaged in the sum of no less than $300,000.00.

## COUNT THREE
Breach of Consulting Agreement

68. Plaintiff realleges all allegations elsewhere in this Complaint.
69. The Consulting Agreement provides that it is to be "governed and construed in accordance with the laws of the State of Arizona" which provides that "[a] general principle of contract law is that when parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grubb & Ellis Mgmt. Serv., Inc. v. 407417 B.C., L.L.C.,* 213 Ariz. 83, ¶

12, 138 P.3d 1210, 1213 (App.2006). "'Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto.'" *see also Liberty Ins. Underwriters, Inc. v. Weitz Co., L.L.C.,* 215 Ariz. 80, ¶ 8, 158 P.3d 209, 212 (App.2007) ("If the contractual language is clear, we will afford it its plain and ordinary meaning and apply it as written.").

70. The promises and covenants in the Consulting Agreement are clear and unambiguous and there is no need for construction or interpretation.

71. Defendant Schuyler is liable under the alter ego principles as documented above.

72. Defendants Hodge and Delaportas are liable because they were instrumental in the preparation, execution and breach of the Consulting Agreement.

73. Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market and to secure Plaintiff's assistance in their endeavor. Accordingly, the breach of the Consulting Agreement committed by any of them imposes liability on the other two.

74. Plaintiff has been damaged in the sum of $300,000.00.

### COUNT FOUR
### Breach of Covenant of Good Faith and Fair Dealing

75. Plaintiff realleges all allegations elsewhere in this Complaint.

76. The Consulting Agreement provides that it was to be "governed and construed in accordance with the laws of the State of Arizona".

77. Arizona law implies a covenant of good faith and fair dealing in every contract. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985). The duty arises by virtue of a contractual relationship. The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship. *Id.* Plaintiff may recover "compensatory damages for breach of contract, or damages in tort if the insurer's actions rise to the level of bad faith." *Miel v. State Farm Mut. Auto. Ins. Co.,* 185 Ariz. 104, 111, 912 P.2d 1333, 1340 (App. 1995)

78. Le Nid USA, Inc. breached the covenant of good faith and fair dealing by knowingly entering into a contractual relationship with Plaintiff with no ability or intent to perform its obligations, and did so with specific instructions from Schuyler, Hodge and Delaportas, and also authorized the UCC financing statement encumbering all their assets in favor of a third party.
79. Defendant Schuyler is liable under the alter ego principles as stated above.
80. Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market. Accordingly, the breach of the covenant of good faith and fair dealing by any of them imposes liability on the other two.
81. Plaintiff has been damaged in the sum of $300,000.00.

**COUNT FIVE**
Intentional Interference with Contract

82. Plaintiff realleges all allegations elsewhere in this Complaint.
83. A valid Consulting Agreement existed between Le Nid USA, Inc. and Plaintiff.
84. Defendants and Delaportas were aware of the Consulting Agreement.
85. In or about July of 2023, Hodge, who was not a party to the Consulting Agreement, instructed Delaportas to stop making retainer payments to Plaintiff.
86. Delaportas complied with Hodge's instructions and stopped making payments to Plaintiff.
87. Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market. Accordingly, the interference with contract alleged here imposes liability of Schuyler.
88. Defendants are guilty of oppression, fraud or malice; therefore, pursuant to California Civil Code §3294(a), Plaintiff is entitled to punitive damages.
89. Plaintiff has been damaged in the sum of $300,000.00.

**COUNT SIX**
Fraudulent Conveyance – Applying Arizona Law

90. Plaintiff realleges all allegations made elsewhere in this Complaint.
91. On May 30, 2024, Schuyler, LNCI and Le Nid USA, Inc. liened all their assets in favor of CT Corporation Systems, "as representative".

11

92. UCC liens conveyances alleged in ¶¶43-45 constituted fraudulent conveyances under ARS §44-1001, *et. seq.*
93. The UCC encumbrances were made with actual intent to hinder, delay or defraud creditors of LNCI, Schuyler and Le Nid USA, Inc., including Plaintiff.
94. The UCC encumbrances were made without LNCI, Le Nid USA, Inc. or Schuyler receiving reasonably equivalent value in exchange.
95. Defendants were consciously aware of the wrongfulness or harmfulness of their conduct and intentionally acted in deliberate contravention to the rights of the Plaintiff.
96. Defendants are guilty of oppression, fraud or malice; therefore, pursuant to California Civil Code §3294(a), Plaintiff is entitled to punitive damages.

**PRAYER FOR RELIEF**

**WITH RESPECT TO COUNT ONE (**Common Law Fraud, Concealment and Non-Disclosure**)**, **COUNT TWO (**Promissory Fraud – Fraud in the Inducement**)**, and **COUNT FIVE** (Intentional Interference with Contract), Plaintiff requests relief as follows:

   A. Compensatory damages against Defendants in the sum of no less than $300,000.00; and
   B. Punitive damages against Defendants in an amount sufficient to deter these Defendants and others from similar fraudulent misconduct; and
   C. Interest thereon at the rate of 10% until paid in full; and
   D. Compensable costs and expense; and
   E. Attorney's fees as these claims arise out of contract in the event Plaintiff retains counsel; and
   F. For such other and further relief as appropriate

**WITH RESPECT TO COUNT THREE** (breach of contract) and **COUNT FOUR** (breach of implied covenant of good faith and fair dealing), Plaintiff seeks relief as follows:

   A. Compensatory damages against Defendants in the sum of no less than $300,000.00; and
   B. Interest thereon at the rate of 10% until paid in full; and

12

C. Compensable costs and expense; and

D. Attorney's fees as these claims arise out of contract in the event Plaintiff retains counsel; and

E. For such other and further relief as appropriate

**WITH RESPECT TO COUNT SIX** (Fraudulent Conveyance), Plaintiff seeks relief as follows:

A. Avoidance of the transfers to the extent necessary to satisfy Plaintiff's compensatory claims in the amount of $300,000 plus such additional amounts as may be imposed for punitive damages; and

B. Punitive damages against Defendants in an amount sufficient to deter these defendants and others from similar fraudulent misconduct; and

C. Taxable costs and expenses;

D. Insofar as this fraud arises out of contract, for attorney's fees in the event Plaintiff retains counsel; and

E. Such other relief as the Court may find proper.

RESPECTFULLY SUBMITTED this 29th day of August, 2025.

_____
Peter Strojnik
Plaintiff