Peter Strojnik
7847 N. Central Ave
Phoenix, Arizona 85020
602-524-6602
ps@strojnik.com



# IN THE UNITED STATES DISTRICT COURT
## CALIFORNIA CENTRAL DISTRICT

| PETER STROJNIK,<br><br>Plaintiff<br><br>v.<br><br>KYLIE SCHUYLER and DOUGLAS HODGE, husband and wife,<br><br>Defendants. | Case No: 8:25-cv-01944-JVS-JDE<br><br>**NOTICE OF MOTION AND MOTION FOR DEFAULT JUDGMENT**<br><br>Date: December 8, 2025<br><br>Time: 1:30 pm<br><br>Judge: James V. Selna |
|---|---|

PLEASE TAKE NOTICE that on December 8, 2025 at 1:30 pm or as soon thereafter as the matter may be heard before the Honorable James V. Selna in Courtroom 10C, in the United States District Court located at 411 West Fourth Street, Santa Ana, California, Plaintiff Peter Strojnik will and hereby does move this Court for an Order entering default judgment against Defendant pursuant to Rule 55, Federal Rules of Civil Procedure. The grounds for this Motion are that Defendant has failed to defend within the time proscribed by Rule 12 and the Clerk of the Court has entered default against Defendant.

With this Motion, Plaintiff respectfully prays for the entry of judgment against Defendant in the following particulars:

- ✓ Damages in the amount of $300,000.00; and
- ✓ Costs in the amount of $544.00.

This Motion is based upon the Memorandum of Points and Authorities below and supported by previously filed documents:

1

ECF 15 - L.R. 55-1 *Declaration In Compliance With F.R.Civ.P. 55(B)(1) and/or (2)* filed by Plaintiff Peter Strojnik. (es) (Entered: 11/13/2025)

ECF 16 - *Declaration Of Damages* filed by Plaintiff Peter Strojnik (es) (Entered: 11/13/2025)

ECF 17 - DECLARATION OF COMPENSABLE COSTS filed by Plaintiff Peter Strojnik. (es) (Entered: 11/13/2025)

A proposed form of Order and Judgment is attached.

RESPECTFULLY SUBMITTED this 19th day of November, 2025.

_____
Peter Strojnik
Plaintiff

## **MEMORANDUM OF POINTS AND AUTHORITIES**

FRCP 55(b)(1) authorized the Clerk of Court to enter default judgment where the "claim is for a sum certain". Therefore, for the purpose of this Application for Default Judgment, Plaintiff waives his prayer for punitive damages and all remedies sought in Count Six for fraudulent transfer. This leaves only claims for a sum certain, that is, $300,000.00, jointly and severally, against Defendants Kylie Schuyler and Douglas Hodge.

**1. BACKGROUND**

**A. Factual Background**

**The Crèmily Project**

Defendant Kylie Schuyler ("Defendant Schuyler") developed and owned a recipe for tasty Crèmily French Frozen Yogurt and related food products ("Crèmily Products") and desired to bring them to the retail market ("Crèmily Project") *Id.* at ¶5. However, Defendant Schuler lacked the necessary funds to fund the Crèmily Project, so Defendant Douglas Hodge ("Defendant Hodge") agreed to fund it. *Id.* at ¶¶6-7. Defendants Schuyler and Hodge are wife and husband residing in Laguna Beach, California. Complaint, ECF 1 at ¶2.

Defendants Schuyler and Hodge lacked the experience in the food manufacturing, marketing and distribution business; therefore, in or about early 2020's, they engaged

one Steven Delaportas *a/k/a* Steven *Dellaportas* (hereafter "Mr. Delaportas") to organize and manage the Crèmily Project. *Id.* at ¶8. Defendant Schuyler was principally in charge of supervising Mr. Delaportas with respect to Crèmily Products' manufacture, quality control, packaging and presentation, while Defendant Hodge, as funder, was principally in charge of supervising Mr. Delaportas' business and financial management of the Crèmily Project. *Id.* at ¶9.

In late 2022, Mr. Delaportas recruited Plaintiff to provide strategic business services to Le Nid Consortium International, Inc. ("LNCI"). *Id.* at ¶11. Mr. Delaportas represented to Plaintiff that, inter alia:

A. He was hired by Defendants Schuyler and Hodge to help them in the manufacture, market, sales and distribution of Crèmily Products; and

B. He (Delaportas) was the CEO of LNCI; and

C. Defendants Schuyler and Hodge are husband and wife; and

D. Defendant Hodge funded the Crèmily Project with a $1B ($1,000,000,000) fund.

*Id.* at ¶12.

Following initial discussions and price negotiations, Mr. Delaportas confirmed to Plaintiff that Defendants authorized him to execute a consulting agreement between LNCI and Plaintiff. *Id.* at ¶13.

Immediately prior to the execution of the Consulting Agreement, Mr. Delaportas advised Plaintiff that Defendants required the consulting agreement to be made between Plaintiff and another Schuyler-controlled company, Le Nid USA, Inc. "for accounting purposes". *Id.* at ¶14. Mr. Delaportas further advised Plaintiff that the Consulting Agreement with Le Nid USA, Inc. was financially secure because the entire Crèmily Project was funded by Defendant Hodge with $1B. *Id.* at ¶15. Mr. Delaportas did not disclose that Le Nid USA, Inc., was a shell company with no ability or intent to pay the $10,000.00 monthly retainer fee to Plaintiff. *Id.* at ¶16.

Plaintiff reasonably relied on Mr. Delaportas' representations, concealment, and non-disclosures, and entered the Consulting Agreement effective January 1, 2023. (Exhibit 1 to ECF 4) *Id.* at ¶¶17-18. The Consulting Agreement was an "on call" retainer

3

agreement at $10,000 per month. The Consulting Agreement was effective from January 1, 2023 to December 31, 2023, with automatic one year extensions subject to either party's right to give the other a written notice of non-renewal for the additional year. The Consulting Agreement was to be "governed and construed in accordance with the laws of the State of Arizona". *Id.* at ¶19.

In late 2022 and into 2023, Mr. Delaportas managed and promoted the Crèmily Project, he brought on some of his own staff and employees, hired new employees, influencers, contractors, organized a full recording studio with cameras, lights, actors and actresses, he negotiated contracts with third party vendors and contractors, and managed various Le Nid / Crèmily companies into what became known as the Crèmily – Le Nid Enterprise[1]. *Id.* at ¶21. During this period, Plaintiff timely and competently provided services and strategic guidance as requested. *Id.* at ¶22. Plaintiff was paid for his services for each month between January and June of 2023. *Id.* at ¶23.

**<u>Breach of the Consulting Agreement, Settlement of the Breach, and Breach of the Settlement Agreement.</u>**

During the Summer of 2023, a conflict developed between Mr. Delaportas and Defendant Hodge. Mr. Delaportas was accused of mismanagement and waste of Defendant Hodge's funding. *Id.* at ¶24. Defendant Hodge demanded a restructuring of the workforce, management and operations of LNCI and, as a result, LNCI significantly reduced its workforce and operational costs. *Id.* at ¶25.

Effective July 1, 2023, Defendant Hodge instructed Mr. Delaportas to cease making $10,000.00 payments to Plaintiff. *Id.* at ¶26. At this time, Hodge was not an officer, director or authorized person working for or on behalf of Le Nid USA, Inc. or LNCI. *Id.* at ¶27. Mr. Delaportas complied with Defendant Hodge's instructions and payments to

---

[1] The Crèmily – Le Nid Enterprise consisted of at least the following persons and entities all of whom were involved in the Crèmily Project: Defendant Schuyler; Defendant Hodge; Steven Delaportas *aka* Steven Dellaportas; Le Nid, Inc.; Le Nid USA, Inc., a defunct Florida corporation; Le Nid USA, Inc., a New Mexico Corporation; Le Nid Consortium International, Inc. ("LNCI"); Le Nid Brands, Inc.; Le Nid Bottling, Inc.; Le Nid Creamery San Diego, Inc.; Le Nid Bottling California, Inc.; Le Nid Technologies, Inc.; Le Nid Intellectual Property, Inc.; Crèmily , Inc. and, upon information and belief, Le Nid Asia, Inc. and Superfrutas Beverage Company, Inc.

Plaintiff stopped. *Id.* at ¶28. Plaintiff first learned that Defendant Hodge instructed Mr. Delaportas to stop making payments at a meeting on November 21, 2023 when Mr. Delaportas admitted to him for the first time that contract payments were terminated at Defendant Hodge's instructions, *id.* at ¶32.

On October 31, 2023, the Consulting Agreement automatically extended to December 31, 2024. *Id.* at ¶29.

On November 21, 2023, Plaintiff met with Mr. Delaportas at Matt's Big Breakfast on Camelback Road to discuss a resolution of Le Nid's breach of the Consulting Agreement. *Id.* at ¶30. Mr. Delaportas stated to Plaintiff that Defendants Schuyler Hodge wanted to settle Plaintiff's breach of contract and related claims. *Id.* at ¶31.

At the meeting, Delaportas admitted and acknowledged that the Consulting Agreement remained in effect, that Le Nid USA, Inc. breached it, and that Plaintiff was due the monthly retainers from July of 2023 to December 31, 2024 in the sum of $180,000.00. *Id.* at ¶33. Unfortunately, Plaintiff and Mr. Delaportas were unable to reach a settlement at this time. *Id.* at ¶34.

On December 4, 2023, Plaintiff met again with Mr. Delaportas and his executive secretary Ms. Alejandra Coy at LNCI offices to discuss settlement of Plaintiff's claims against Defendant Schuyler, Defendant Hodge, LNCI, Le Nid USA, Inc. and Mr. Delaportas. *Id.* at ¶35. At this meeting, a settlement was reached. *Id.* at ¶36. As soon as the settlement agreement was agreed to, it was breached. *Id.* at ¶37.

On October 31, 2024, the Consulting Agreement was automatically renewed to December 31, 2025. *Id.* at ¶38. On June 17, 2025, Plaintiff gave Defendants notice of option to not extend the Le Nid Consulting Agreement for another year. *Id.* at ¶39.

**Fraudulent Conveyance of Schuyler's, LNCI's and Le Nid USA, Inc.'s Assets.**

On February 27, 2024, LNCI granted to Defendant Schuyler a UCC lien encumbering all its assets as documented in UCC Financing Statement No. 2024-000-0849-0 filed with the Arizona Secretary of State. *Id.* at ¶40.

On May 30, 2024, LNCI, Le Nid USA, Inc., and Defendant Schuyler, along with the entire Crèmily – Le Nid Enterprise members, liened all their assets to CT Corporation

5

Systems, "as representative", as documented in UCC Financing Statement No. 2024-002-4478-3 filed with the Arizona Secretary of State. *Id.* at ¶41. Two days later, on Saturday, June 1, 2024, Delaportas and the entire Crèmily – Le Nid Enterprise vacated the offices at 6991 E. Camelback in Scottsdale and ceased operations. *Id.* at ¶42.

**Le Nid USA, Inc. was/is the Alter Ego of Defendant Schuyler.**

There was such a unity of interest and ownership between Le Nid USA, Inc. and Defendant Schuyler that it no longer existed as a separate entity because, at the time of the execution of the Consulting Agreement, Le Nid USA, Inc.:

A. Was not authorized to conduct business in Arizona; and
B. Failed to properly maintain corporate records; and
C. Other than contracting with Plaintiff, it conducted no known business; and
D. It had no paid employees; and
E. It was insolvent to pay monthly retainer to Plaintiff; and
F. Permitted Defendant Hodge, who was not its officer, director or equity holder and was not authorized to conduct its affairs, to instruct Delaportas to (1) enter the Consulting Agreement with Plaintiff in late 2022, and (2) instructed Delaportas to stop making retainer payments to Plaintiff effective July of 2023; and
G. Was not the true beneficiary of the Consulting Agreement; the true beneficiaries were LNCI, Defendant Schuyler, Defendant Hodge and Mr. Delaportas; and
H. Authorized Mr. Delaportas to hold himself out as its CEO of LNCI and Le Nid USA, Inc. under the assumed name *Dellaportas* when in fact, Delaportas was not the CEO of these companies and his true name is not *Dellaportas.*
I. Is a members of the so called Crèmily – Le Nid Enterprise and share Defendant Schuyler as the common officer and director and Mr. Delaportas as the actual control person. *Id.* at ¶43.

Failure to disregard the corporate veil would result in fraud or injustice because, at the time of the execution of the Consulting Agreement, all of the following was true:

A. In the last moment prior to the execution of the Consulting Agreement between Plaintiff and LNCI, Defendant Hodge instructed Delaportas to enter the consulting

6

      agreement between Plaintiff and Le Nid USA, Inc. and stated to Plaintiff that this would be done "for accounting purposes" only; and

B. Defendants and Mr. Delaportas induced Plaintiff to enter the consulting agreement allegedly for "accounting purposes" when in fact the purpose was to shield Defendant Hodge, who was not an officer, director or equity holder, from liability; and

C. Defendants knew that Le Nid USA, Inc. was insolvent and had no intent or ability to pay the monthly retainers to Plaintiff; and

D. Unless the corporate veil of Le Nid USA, Inc. is lifted, Defendant Schuyler and Defendant Hodge would benefit from Plaintiff's services and Plaintiff would be harmed by the breach because Le Nid USA, Inc. was/is insolvent. *Id.* at ¶40.

Defendant Schuyler, Defendant Hodge and Mr. Delaportas did not use Le Nid USA, Inc. "for accounting purposes" as stated to Plaintiff, but to ensure that Plaintiff would not be able to recover against Le Nid USA, Inc. in the event Defendant Hodge pulled his funding. *Id.* at ¶45. Defendant Schuyler, Defendant Hodge and Mr. Delaportas knew that Le Nid USA, Inc. was unable to pay monthly retainers under the Consulting Agreement and had no intention of performance. *Id.* at ¶46.

Disregarding the corporate separateness of Le Nid USA, Inc. is necessary to prevent injustice and fraud because the observance of its corporate form would and did confuse Plaintiff and frustrate his efforts to protect his rights, while allowing individual Defendants to evade payment on their liability. *Id.* at ¶47.

Defendants have committed fraud sufficiently to permit the piercing of corporate veil to reach Defendant Schuyler because, inter alia, Mr. Schuyler and Defendant Hodge insisted that the Consulting Agreement be entered between Plaintiff and Le Nid USA, Inc. because Le Nid USA, Inc., was insolvent and unable to perform under the Consulting Agreement. *Id.* at ¶48.

**B. Procedural Background**

Plaintiff filed his Complaint on August 28, 2025. Defendant Schuyler and Defendant Hodge were properly served with process on October 9, 2025. ECF 9 and 10. On November 12, 2025, the Clerk of Court entered default. ECF 13.

## 2. LEGAL STANDARD

### A. Procedural Requirements for Default Judgment

A party seeking a default judgment must satisfy the procedural requirements of the Federal Rules of Civil Procedure and Local Rules. Under Federal Rule of Civil Procedure 55(b), a party may only seek a default judgment from the court following an entry of default by the Clerk of Court. Fed. R. Civ. P. 55(b). Additionally, the "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Finally, the party must comply with Local Rule 55-1 by submitting a declaration alongside the application for default judgment that includes the following information:

> (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a guardian, committee, conservator, or other representative; (4) that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (5) that notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2).

### B. Substantive Requirements For Default Judgment

Where a party seeking default judgment meets the procedural requirements discussed above, the court then considers the factors set forth by the Ninth Circuit in *Eitel v. McCool,* 782 F.2d 1470 (9th Cir. 1986), to determine whether to grant the requested default judgment. In *Eitel,* the Ninth Circuit stated:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.
> *Id.* at 1471-72.

"The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys. v.*

*Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir. 1977) (internal quotation marks and citations omitted)); *see also Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true.").

**3. ENTRY OF JUDGMENT BY DEFAULT IS PROPER AND NECESSARY**

**A. Subject Matter and Personal Jurisdiction**

This Court also has diversity jurisdiction pursuant to 28 U.S.C. §1332 based on the following:

    A. Plaintiff is a citizen of the state of Arizona; and

    B. Defendants are citizens of the State of California; and

    C. The amount in controversy, including (1) compensatory and punitive damages, (2) attorney's fees, and (3) avoidance of fraudulent transfers greatly exceeds the statutory threshold of $75,000.00. *Complaint* at ¶3.

The Court has personal jurisdiction because Defendants reside in Laguna Beach. *Id.* at ¶2.

**B. Procedural Requirements**

The Clerk of Court entered default pursuant to Fed. R. Civ. P. 55(b) on November 12, 2025. ECF 13. Local Rule 55-1 declaration has been filed.

**C. Application of the *Eitel* Factors.**

<u>*i. Possibility of Prejudice to Plaintiff*</u>

The first Eitel factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Defendants have not answered or otherwise participated in the suit. As a result, Plaintiff will be prejudiced if default judgment is not entered because Plaintiff will "likely be without other recourse for recovery." *See PepsiCo,* 238 F. Supp. 2d at 1177. Accordingly, the court concludes the first *Eitel* factor weighs in favor of granting default judgment.

<u>*ii. The Merits of Plaintiff's Substantive Claim and the Sufficiency of the Complaint*</u>

Under the second and third *Eitel* factors, the court considers the substantive merits of the plaintiff's claims and the sufficiency of the operative complaint. *Eitel,* 782 F.2d at 1471; *see also Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978) (explaining "the issue [as to the second and third factors] is whether the allegations in the complaint are sufficient to state a claim"); *Dr. JKL Ltd. v. HPC IT Educ. Ctr.,* 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together.").

Plaintiff's Complaint brings six counts for relief[2]. Counts One and Two relate to fraud and fraudulent inducement. These Counts allege direct liability on the part of Defendant Schuyler and the "common plan and design" (conspiracy) liability of Defendants Schuyler and Hodge. Counts Three and Four relate to Le Nid USA, Inc.'s breach of the consulting agreement. These Counts allege alter ego liability on the part of Defendant Schuyler on the co-conspirator liability based on the "common plan and design" between Defendants Schuyler and Hodge, and Mr. Delaportas. Count Five alleges Defendant Hodge's direct and co-conspirator liability for intentionally interfering with Plaintiff's Consulting Agreement with Le Nid USA, Inc. Count Five also alleges a "common plan and design" (conspiracy) liability against both Defendants Schuyler and Hodge. Count Six alleges fraudulent transfer of the entirety of Defendant Schuyler assets to a third party in order to thwart Plaintiff's right of recovery. As indicated above, the remedies asserted in Count Six are waived for the purpose of this Application and the Entry of Judgment by Default.

A. Alter Ego Liability

---

[2] For reference, Plaintiff restates the 6 counts:
   Counts One **(**Common Law Fraud, Concealment and Non-Disclosure)**,**
   Count Two **(**Promissory Fraud – Fraud in the Inducement)**,**
   Count Three (Breach of Contract),
   Count Four (breach of covenant of good faith and fair dealing),
   Count Five (intentional interference with contract),
   Count Six (fraudulent conveyance).

10

The allegations of the alter ego doctrine must "allege specifically both the elements of alter ego liability, as well as facts supporting each." *MH Pillars Ltd. v. Realini,* No. 15-cv-1383-PJH, 2017 WL 916414, at *12 (N.D. Cal. Mar. 8, 2017) (citation omitted). The plaintiff must show that "(1) there is such unity of interest and ownership that the separate personalities or the two entities no longer exists, and (2) failure to disregard their separate identities would result in fraud or injustice." *Williams v. Yamaha Motor Co. Ltd.,* 851 F.3d 1015, 1021 (9th Cir. 2017) (citing omitted).

Plaintiff's Complaint at ¶¶43-48, and the specific references below, details the underlying events, facts and circumstances showing that Defendants used Le Nid USA, Inc. as their alter ego under the section titled *Le Nid USA, Inc. (NM) was a mere Instrumentalities and Alter Ego of Schuyler, Hodge and Delaportas*.

B. Common Plan or Design (Conspiracy) Liability

The Common Plan or Design, or "Conspiracy[,] is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal. 4th 503, 510-11, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994) (in bank); *see also AccuImage Diagnostics Corp. v. Terarecon, Inc.,* 260 F. Supp. 2d 941, 947-48 (N.D. Cal. 2003) (dismissing standalone civil conspiracy claim with prejudice because "civil conspiracy is not a separate and distinct cause of action under California law" and explaining that any "amended [civil conspiracy] allegations ... must be made within the sections of the complaint that contain plaintiff's claims for the underlying" violations).

To properly plead a conspiracy cause of action, the plaintiff must allege "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Mox, Inc. v. Woods,* 202 Cal. 675, 677, 262 P. 302 (1927). Yet "agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Black v. Bank of America,* 30 Cal.App.4th 1, 4-5, 35 Cal.Rptr.2d 725 (1994) (internal quotations omitted); *Wise v. S. Pacific Co.,* 223 Cal.App.2d 50, 72-73, 35 Cal.Rptr. 652

11

(1963), *overruled on other grounds by Applied Equip.,* 7 Cal.4th 503, 28 Cal. Rptr.2d 475, 869 P.2d 454 (1994). Specifically, the "agent's immunity rule" proscribes conspiracy claims between and against agents and their principals. *See Doctors' Co. v. Super. Ct,* 49 Cal.3d 39, 45, 260 Cal.Rptr. 183, 775 P.2d 508 (1989). **But the agent's immunity rule does not apply in cases where directors and officers of a corporation "directly order[], authorize[], or participate[] in the tortious conduct."** *Wyatt v. Union Mortgage Co.,* 24 Cal.3d 773, 785, 157 Cal.Rptr. 392, 598 P.2d 45 (1979)

Plaintiff's allegations of conspiracy are based on Mr. Delaportas' actions and Defendant Schuyler's and Hodge's direct participation in and authorization of tortious conduct alleged throughout the Complaint. The Common Plan and Design is established through Defendants direct orders, authorizations and direct participation.

The factual allegations in each count follow.

**Count One** (common law fraud, concealment and non-disclosure) initially incorporates all allegations elsewhere in the Complaint, *see Complaint at* ¶49, and makes the following factual alleges that Mr. Delaportas, working at the direction of and in concert with Schuyler and Hodge, made the following misrepresentations to Plaintiff:

A. Than he (Delaportas) was the CEO of LNCI and Le Nid USA, Inc.; and
B. That Hodge funded the Crèmily Project with a $1B ($1,000,000,000) fund; and
C. The Consulting Agreement had to be made between Plaintiff and Le Nid USA, Inc. and not between Plaintiff and LNCI "for accounting purposes"; and
D. The Le Nid USA, Inc.'s performance was secure and guaranteed with Hodge's funding of $1B.

*Id.* at ¶50.

In Count One, Plaintiff further clarifies that Defendants and Mr. Delaportas actively concealed the material fact that Le Nid USA, Inc. was insolvent and had no ability or intention to fulfill its contractual obligations, *id.* at ¶51, that Defendants and Delaportas made partial representations about Le Nid USA, Inc.'s ability to make payments from Hodge's $1B funding suppressed the material facts that Hodge had

unfettered ability to withhold funding, *id.* at ¶52, that these representations were false, *id.* at ¶53, that Defendants and Mr. Delaportas knew that these representations and concealments of material facts were made, and that that the representations and concealments of fact were false, *id.* at ¶54, that the representations and concealment of material facts were made with the intent to induce Plaintiff's reliance in the execution of the Consulting Agreement, *id.* at ¶55, that Plaintiff justifiably relied on the misrepresentations and concealment of material facts, *id.* at ¶56. Had Plaintiff been aware that these representations, concealments of material facts, and partial representations were false, he would not have entered the Consulting Agreement without further assurances of Le Nid USA, Inc.'s ability to perform, *id.* at ¶58, that Plaintiff has been damaged by Defendant's false representations, concealment of facts, and partial disclosures because in July of 2023, Hodge instructed Delaportas to stop making payments to Plaintiff, *id.* at ¶58, that Plaintiff has been damaged in the amount of unpaid monthly retainers from July 2023 to December 2025 in the amount of no less than $300,000.00, *id.* at ¶59.

The Complaint also specifically and factually alleges that "Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market and to not pay Plaintiff. Accordingly, the fraud committed by any of them imposes liability on the other two", *id.* at ¶60, and that "Defendants were guilty of oppression, fraud or malice; therefore, pursuant to California Civil Code §3294(a), Plaintiff seeks imposition of punitive damages, *id.* at ¶61.

**Count Two** (Promissory Fraud – Fraud in the Inducement), Plaintiff realleges allegations elsewhere in the Complaint, *id.* at ¶¶62, 63, and further supports Count Two with the specific statement that "Defendants and Delaportas intended to and did induce Plaintiff to enter the Consulting Agreement with Le Nid USA, Inc. by making promises they did not intend to keep since Le Nid USA, Inc was unable to perform". *Id.* at ¶64. Plaintiff also alleges a common plan and design between Defendants and Mr. Delaportas, the facts supporting imposition of punitive damages, and the damages of $300,000.00 suffered by Plaintiff. *Id.* at ¶¶65-67.

**Count Three** (breach of consulting agreement) alleges Defendants' alter ego and conspiracy liability for the breach of Plaintiff's Consulting Agreement with Le Nid USA, Inc. *Id.* at ¶¶68-74.

**Count Four** (breach of covenant of good faith and fair dealing) alleges Defendants' alter ego and conspiracy liability for the breach of the covenant of good faith and fair dealing. *Id.* at ¶¶75-81.

**Count Five** (intentional interference with contract) alleges that that a valid Consulting Agreement existed between Le Nid USA, Inc. and Plaintiff, *id.* at ¶ 83, that Defendants and Mr. Delaportas were aware of the Consulting Agreement, *id.* at ¶84, that "in or about July of 2023, Hodge, who was not a party to the Consulting Agreement, instructed Delaportas to stop making retainer payments to Plaintiff", *id.* at ¶ 85, and that that Mr. Delaportas complied with Hodge's instructions and stopped making payments to Plaintiff. *Id.* at ¶ 86. Plaintiff realleges the common plan and design allegation, *id.* at ¶ 87, punitive damages allegation, *id.* at ¶ 88 and damages in the amount of $300,000.00, *id.* at ¶ 89.

**Count Six** (fraudulent conveyance – Applying Arizona Law) alleges that on May 30, 2024, Defendant Schuyler, LNCI, Le Nid USA, Inc. liened all their assets in favor of CT Corporation Systems, "as representative", *id.* at ¶91 and recorded a UCC-1 Statement with the Arizona Secretary of State at 2024-002-4478-3. *Id.* at ¶41. Plaintiff further alleged that UCC liens conveyances alleged in ¶¶43-45 constituted fraudulent conveyances under ARS §44-1001, *et. seq., id* at ¶92, that the conveyances were made with the actual intent to hinder, delay or defraud Plaintiff, *id.* at ¶93, that the UCC conveyances were made without LNCI, Le Nid USA, Inc. or Defendant Schuyler receiving reasonably equivalent value in exchange, *id.* at ¶94. In ¶¶94-95. For the purpose of this Application, Plaintiff waives all remedies in Count 6.

   *iii. Sum of Money at Stake*

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo,* 238 F. Supp. 2d at 1176. This *Eitel* factor "requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." *United States v. Broaster Kitchen,*

14

*Inc.,* 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015). "When the sum of money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Yelp Inc. v. Catron,* 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014) (quoting *Bd. of Trs. v. Core Concrete Constr., Inc.,* 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012))

The sum of money at stake is $300,000.00, but the nature of Defendant's conduct is serious. Defendants fraudulently induced Plaintiff to enter the Consulting Agreement with their *alter ego* Le Nid USA, Inc., a shelf corporation with no assets, no business, no ability or intent to perform its part of the bargain. When their liability became clear, Defendants, through Mr. Delaportas, settled Plaintiff's claims and immediately upon settlement, breached the settlement agreement. They then committed fraudulent transfer by imposing liens on all their assets in order to avoid payment. This was done with the specific intent to deny Plaintiff the remedies for breach of contract.

The sum of money factor favors Plaintiff.

### iv. Possibility of Dispute Concerning Material Facts

"The fifth Eitel factor considers the possibility of dispute as to any material facts in the case." *PepsiCo,* 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." Id. (quoting *TeleVideo*, 826 F.2d at 917-18).

In this case, Plaintiff "filed a well-pleaded complaint alleging the facts necessary to establish its claims." *Philip Morris USA, Inc. v. Castworld Prod. Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003). Because Defendants have failed to plead or otherwise defend in this action and because the Court accepts well-pleaded facts in the Complaint as true, the Court can easily conclude that Plaintiff's allegations are undisputed and true. *See TeleVideo,* 826 F.2d at 917-18. Additionally, the court may find that Plaintiff's factual Complaint "provides substantial evidence of the alleged [torts]," thus "renders the possibility of a dispute concerning material facts negligible." *See Rosen v. Movie Times, Inc.,* 2021 WL 1338960, *4 (N.D. Cal. Apr. 9, 2021). Consequently, fifth *Eitel* factor weighs in favor of granting default judgment.

### v. Whether Default was Due to Excusable Neglect

"The sixth Eitel factor considers the possibility that the default resulted from excusable neglect." *PepsiCo,* 238 F. Supp. 2d at 1177. Where a defendant is "properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," the default "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co. v. Kuei,* 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). Accordingly, there is little possibility that Defendants' default resulted from excusable neglect and that the sixth Eitel factor weighs in favor of entering default judgment. *See Globe Ent. & Media, Corp. v. Global Images, USA,* 2022 WL 2703845, at *5 (C.D. Cal. July 11, 2022) (finding possibility of excusable neglect "remote" where defendant was served with pleadings and motion for default judgment).

Here, Defendants were properly served with the Summons and the Complaint. Further, they received a copy of the Complaint through Plaintiff's service on Defendants' Arizona attorney David Degnan, Esq. (AZ SBN 027422) when, on August 29, 2025, Plaintiff's Arizona counsel filed a formal *Notice of Actions filed by Plaintiff in the US District Court for California Central District and the US District Court in Wyoming* in the Maricopa County Superior Court Case No CV2024-006019. The formal notice included a copy of the Complaint filed in this Court.

This *Eitel* factor favors the entry of default judgment.

### vi. Policy Favoring Decision on the Merits

"Under the seventh *Eitel* factor, the court takes into account the strong policy favoring decisions on the merits." *Globe Ent.,* 2022 WL 2703845, at *5; *see also Eitel,* 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible."). However, "this preference, standing alone, is not dispositive." *PepsiCo,* 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund,* 1996 WL 75314, at *3 (N.D. Cal. 1996)). "[W]hen a defendant's failure to appear and respond makes a decision on the merits impractical, if not impossible, default judgment is appropriate" "[n]otwithstanding the strong policy presumption in favor of a decision on the merits." *Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Black Diamond Contracting Grp., Inc.,* 2017 WL 6496434, at *5 (C.D. Cal. Dec. 18, 2017).

Here, a decision on the merits is "impractical, if not impossible" because Defendants have failed to respond. Accordingly, this factor weighs against but does not preclude an entry of default judgment.

### vii. Summary of the Eitel Factors

In conclusion, Plaintiff requests that the Court find *Eitel* factors one, two, three, four, five, and six weigh in favor of an entry of default judgment. Factor seven weighs against default judgment but is not dispositive. Accordingly, granting Plaintiff's Application for Default Judgment is supported by the *Eitel* factors.

### D. Plaintiff's Request For Relief

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys.,* 826 F.2d at 917-18. The plaintiff bears "the burden of proving damages through testimony or written affidavit." *Bd. of Trs. Boilermaker Vacation Tr. v. Skelly, Inc.,* 389 F. Supp. 2d 1222, 1226 1132*1132 (N.D. Cal. 2005)[3].

The measure of damages requested in Counts One through Five is the loss of monthly $10,000.00 retainer payments for 30 months, or $300,000.00.

Counts One, Two, Five and Six also request imposition of punitive damages. For the purpose of this Application only, however, Plaintiff waives an award of punitive damages.

### 4. CONCLUSION AND PRAYER FOR RELIEF

For these reasons, Plaintiff respectfully requests the entry of the Default Judgment a draft copy of which is filed herewith.

RESPECTFULLY SUBMITTED this 19th day of November, 2025

_____
Peter Strojnik
Plaintiff

Filed electronically through Court's Civil Intake program on November 19, 2025.

---

[3] *See* Separately Filed Declaration of Damages.

17

## PROOF OF SERVICE

The foregoing served this 19th day of November on the following:

David Degnan, Esq.
Brandon N. Texido, Esq.
DEGNAN HORNE 4105 N. 20th Street, Suite 220
Phoenix, Arizona 85016
d.degnan@degnanlawaz.com
b.texido@degnanlawaz.com
*Defendants Former Arizona Attorneys*
by email only

Mark D. Chester, Esq.
Chester Law, PLLC
9332 N. 95th Way, Suite 109
Scottsdale, Arizona 85258
mchester@mdclawyers.com
Attorneys for LNCI and Le Nid USA, Inc.
by email only

Kylie Schuyler and Douglas Hodge
157 Emerald Bay
Laguna Beach, CA 92651
*by certified mail.*

_____
Peter Strojnik
Plaintiff