Jeffrey A. Feasby, State Bar No. 208759
Evan C. Flores, State Bar No. 325006
PEREZ VAUGHN & FEASBY Inc.
600 B Street, Suite 2100
San Diego, California 92101
Telephone: (619) 702-8044
Facsimile: (619) 460-0437
Email: feasby@pvflaw.com
        flores@pvflaw.com

Attorneys for Defendants
Kylie Schuyler and Douglas Hodge

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER STROJNIK,<br><br>Plaintiff,<br><br>v.<br><br>KYLIE SCHUYLER, and DOUGLAS HODGE,<br><br>Defendants. | Case No. 8:25-cv-01944-JVS-JDE<br><br>Hon. James V. Selna<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION**<br><br>**[F.R.C.P. 12(b)(6), (7)]**<br><br>Date:    February 23, 2026<br>Time:    1:30 p.m.<br>Courtroom: 10C |

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................ 1

II. PLAINTIFF'S ALLEGATIONS.................................................................. 3

A. This Case............................................................................................. 3

B. The Arizona Case............................................................................... 5

III. LEGAL ANALYSIS .................................................................................... 6

A. The Court Should Dismiss or Stay the Action Under Colorado River .................................................................................................... 6

B. The Complaint Should be Dismissed for Failure to State a Claim Against Defendants ............................................................................ 10

    1. The Complaint Fails to Allege a Basis for Alter Ego Liability........................................................................................ 11

    2. Defendants Cannot be Liable for Conspiracy ................... 12

    3. The Complaint Fails to Allege Fraud or Promissory Fraud14

    4. Defendants Cannot be Liable for Breach of Contract........ 17

    5. The Complaint Fails to Allege a Claim for Breach of Covenant of Good Faith and Fair Dealing ........................ 18

    6. Plaintiff Cannot Assert a Claim Against Hodge for Intentional Interference with Contract ............................. 20

C. The Complaint Should be Dismissed for Failure to Add a Necessary Party ................................................................................. 21

IV. CONCLUSION............................................................................................. 22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

# TABLE OF AUTHORITIES

**Federal Cases**

*Amin v. Advanced Sterilization Products Services Inc.*, No. SACV 18-1528 JVS (JDEx), 2019 WL 2912862 (C.D. Cal. Jan. 7, 2019) (Selna, J.) ........................ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). ............................................................. 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 10

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ............................................................................................................................. 6

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) ............................................... 14

*Entertainment Research Group v. Genesis Creative Group*, 122 F.3d 1211 (9th Cir. 1997) ................................................................................ 12

*Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92 (9th Cir. 1988) .................................................................................. 11

*In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ......................... 14

*In re Toyota Motor Corp.*, 785 F.Supp.2d 883 (C.D. Cal. 2011) ..................... 21

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005).............................................. 20

*Lutz v. Securitas Security Services USA, Inc.*, No. SACV 17-00243 JVS (JCGx), 2017 WL 10573990 (C.D. Cal. Aug. 14, 2017) (Selna, J.) ................................ 9

*Magnabosco v. Atlantic Richfield Co.*, 45 Fed.Appx. 717 (9th Cir. 2002)...... 15

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006) ............................................... 20

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912 IEG (BLM), 2007 WL 2206946 (S.D. Cal. July 27, 2007)........................................ 16

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) ......... 14

*Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989) ......................................... 6

*R.R. St. & Co. Inc. v. Transport Insurance Co.*, 656 F.3d 966 (9th Cir. 2011) ............................................................................ 7, 8

*Rios v. Peterson*, No. 8:21-cv-00063-JVS (KESx), 2021 WL 9315280 (C.D. Cal. Sept. 15, 2021) (Selna, J.) ........................ 7, 8, 9

*S.E.C. v. Hickey*, 322 F.3d 1123 (9th Cir. 2003) .............................................. 11

*S.E.C. v. Hickey*, 335 F.3d 834 (9th Cir. 2003) ............................................... 11

*Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835 (9th Cir. 2017) .............. 7

*Smith v. Allstate Insurance Co.*, 160 F.Supp.2d 1150 (S.D. Cal. 2001) ......... 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

*Sprint Solutions, Inc. v. Cell Wholesale, Inc.*, No. SACV 15-878-JLS (JCGx), 2015 WL 13919095 (C.D. Cal. Dec. 10, 2015) ................................................... 12

*Sunnyside Development Co., LLC v. Opsys Limited*, No. C 05–0553 MHP, 2005 WL 1876106 (N.D. Cal. Aug. 8, 2005) .................................................. 17

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F. Supp. 3d 1092 (C.D. Cal. 2015) ..................................................... 14, 16

*United InvestexUSA 7 Inc. v. Miller*, No. 8:20-cv-02308-JVS-ADS, 2021 WL 6804224 (C.D. Cal. Nov. 10, 2021) (Selna, J.) ................................... 9

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) ................................... 20

*Ward v. Apple Inc.*, 791 F.3d 1041 (9th Cir. 2015) ......................................... 22

**State Cases**

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994)18

*Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal.App.2d 825 (1963) ................................................................. 11

*Black v. Bank of America*, 30 Cal. App. 4th 1 (1994) ...................................... 12

*Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371 (1990) ................................................................. 18

*Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566 (1973) ................................. 18

*Guido v. Koopman*, 1 Cal.App.4th 837 (1991)................................................ 15

*Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal.5th 1130 (2020) ........................... 21

*Johnson International, Inc. v. City of Phoenix*, 192 Ariz. 466 (1998) ............ 19

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134 (2003) ........... 21

*McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784 (2008)....................... 19

*People v. Beaumont Investment, Ltd.*, 111 Cal.App.4th 102 (2003)......... 12, 13

*Riddle v. Leuschner*, 51 Cal. 2d 574 (1959)................................................... 11

*Schoolcraft v. Ross*, 81 Cal.App.3d 75 (1978)............................................... 19

*Scottsdale Memorial Hospital*, 147 Ariz. 370 (1985). ................................... 18

*Sierra Tucson, Inc. v. Bergin*, 239 Ariz. 507 (2016)...................................... 18

*Tenzer v. Superscope, Inc.*, 39 Cal.3d 18 (1985) ........................................... 16

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

**Federal Rules of Civil Procedure**

Rule 12(b)(6) ................................................................................................ 10

Rule 12(b)(7) ................................................................................................ 21

Rule 19 ......................................................................................................... 21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

Defendants Kylie Schuyler and Douglas Hodge (Defendants) respectfully submit the following points and authorities in support of their motion to dismiss plaintiff Peter Strojnik's (Plaintiff) Complaint and/or to stay of this action.

## I.    **INTRODUCTION**

All of Plaintiff's claims against Defendants are predicated on statements allegedly made to him by a third party, Steven Delaportas, and based on a contract between Plaintiff and another third party, Le Nid USA, Inc. (Le Nid USA), to which Defendants were not parties. The claims relate to a Consulting Agreement under which Plaintiff was to provide business services to Le Nid USA for a monthly fee.

As noted in the introduction to the Complaint in this case, Plaintiff is also pursuing claims in a parallel action filed in Arizona in 2024. The operative complaint in that case alleges the same claims against Delaportas and Le Nid USA as Plaintiff alleges against Defendants in this case. Defendants' liability in this case is predicated on Delaportas' and Le Nid USA's liability in the Arizona case. The Court should stay this case under the *Colorado River* doctrine.

The Court should also dismiss this case for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Specifically, the only basis for Defendants' liability in this case are insufficient allegations that Le Nid USA was Defendants' alter ego and what appear to be claims that Defendants conspired with Le Nid USA and Delaportas. However, the Complaint fails to allege a necessary prerequisite for alter ego liability – that Defendants owned Le Nid USA. The Complaint also fails to allege conspiracy

---

[1] All further Rule references are to the Federal Rules of Civil Procedure unless otherwise noted.

1

since Delaportas is alleged to have been acting as Defendants' agent. Therefore, the Complaint should be dismissed for failure to state a claim against Defendants.

Putting aside the fact that Defendants cannot be liable for the alleged misconduct of Delaportas or Le Nid USA, the Complaint fails to properly state any claim for relief. The Complaint's first cause of action for common law fraud and second cause of action for promissory fraud both arise out of Plaintiff's contention that he entered into a Consulting Agreement with Le Nid USA based on Delaportas alleged representations that Hodge had funded the enterprise with $1 billion, which guaranteed Le Nid USA's performance. It was patently ***unreasonable*** for Plaintiff to rely on such representations. Furthermore, Plaintiff cannot state a claim for promissory fraud because the Complaint makes clear that Le Nid USA performed for a time under the Consulting Agreement. Accordingly, these claims should be dismissed.

The Court should also dismiss the Complaint's third cause of action for breach of the Consulting Agreement. Defendants were not parties to that agreement, which is governed by Arizona law. The rule in Arizona is that only parties to a contract are subject to enforcement of its terms. Therefore, this claim should also be dismissed.

The Complaint fails to allege a claim for breach of the covenant of good faith and fair dealing because the wrongs alleged either happened before the contract was in place or long after it is alleged that the contract was breached. Since the covenant is meant to protect the parties' rights to performance under the contract, the Complaint's allegations cannot breach that covenant.

The Complaint's fifth cause of action is based on Hodge's alleged interference with Le Nid USA's performance under the Consulting

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

Agreement by instructing Delaportas to stop payments under the agreement. However, the Consulting Agreement is an at-will contract. California law is clear that a claim for interference with such contracts require a wrongful act independent of the interference itself. The Complaint includes no such allegations. As a result, this claim should also be dismissed.

Finally, the Complaint should be dismissed pursuant to Rule 12(b)(7) due to Plaintiff's failure to add a necessary party. Plaintiff seeks to void certain UCC conveyances given to another third party, CT Corporation Systems, "as representative." Plaintiff seeks to void those conveyances. As a result, CT Corporation Systems is a necessary party to this action.

For all of these reasons, and as set forth more fully below, Defendants' motion should be granted and the Complaint should be dismissed in its entirety.

## II. PLAINTIFF'S ALLEGATIONS

### A. This Case

This action arises from a Consulting Agreement entered into by and between Plaintiff and Le Nid USA effective January 1, 2023.[2] (Doc. 1, ¶¶ 13-19; RJN Ex. 1.) The Consulting Agreement was negotiated by Plaintiff and Delaportas on behalf of Le Nid USA. (Doc. 1, ¶¶ 11-14.) Delaportas had been hired by Schuyler and Hodge to organize and manage Schuyler's Crémily

---

[2] Although the Complaint alleges that the Consulting Agreement is attached as Exhibit 1 (Doc. 1, ¶ 18), no exhibits were attached to the Complaint. In the Request for Judicial Notice filed herewith (RJN), Defendants request that the Court take judicial notice of the Consulting Agreement referenced in the Complaint and attached as Exhibit 1 to Plaintiff's First Amended Complaint in the Arizona action (RJN Ex. 1), the First Amended Complaint in the Arizona action (RJN Ex. 2), the Arizona court's August 11, 2025 Order Granting Motion to Dismiss (RJN Ex. 3), and the docket from the Arizona action (RJN Ex. 4).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

French Frozen Yogurt project. (*Id.* at ¶¶ 5-9.) Plaintiff alleges that *Delaportas* made various misrepresentations and omissions that induced him to enter into the Consulting Agreement. (*Id.* at ¶¶ 50-52.)

The Consulting Agreement was an "on call" retainer agreement under which Plaintiff was to provide services in exchange for $10,000 per month.[3] (*Id.* at ¶¶ 11, 19.) The Consulting Agreement provides that it is governed by Arizona law. (*Id.* at ¶ 19; RJN Ex. 1, p. 1.) Le Nid USA made its payments through June, 2023. (Doc. 1, ¶ 23.) However, a conflict developed between Delaportas and Hodge in the summer of 2023. (*Id.* at ¶¶ 24-25.) As a result of this dispute, Le Nid USA ceased making payments under the Consulting Agreement as of July 1, 2023. (*Id.* at ¶¶ 26-28.) Despite the alleged material breach of the Consulting Agreement, Plaintiff alleges that it was automatically renewed through December 31, 2024, and again through December 31, 2025. (*Id.* at ¶¶ 29, 38.)

Against this backdrop, Plaintiff alleges that Defendants are liable for Delaportas' alleged misrepresentations as alter egos. (*Id.* at ¶¶ 43-48.) Plaintiff alleges that Schuyler is liable for Le Nid USA's breach of contract and breach of the covenant of good faith and fair dealing as an alter ego. (*Id.* at ¶¶ 71, 79.) He alleges that Hodge is liable because he was "instrumental in the preparation, execution and breach of the Consulting Agreement." (*Id.* at ¶ 72.) It also appears that Plaintiff is alleging that Defendants are liable as conspirators with Delaportas and Le Nid USA.

///

---

[3] Plaintiff alleges that he was to provide "strategic business services" under the agreement. In reality, he was providing legal services despite being disbarred by the State Bar of Arizona. Defendants believe the agreement was an illegal contract and will file a motion for summary judgment on this issue in the event the case proceeds.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

(*See id.* at ¶¶ 60, 65, 73, 80, 81.) Importantly, Plaintiff does not allege that he ever spoke directly with Defendants.

Finally, Plaintiff alleges that Schuyler and others encumbered certain assets on February 27, 2024, as reflected in UCC Financing Statement No. 2024-000-0849-0, and on May 30,2024, as reflected in UCC Financing Statement No. 2024-002-4478-3, filed with the Arizona Secretary of State. (*Id.* at ¶¶ 40-41.) Plaintiff claims that these were fraudulent transfers and seeks to void the transfers "to the extent necessary to satisfy Plaintiff's compensatory claims in the amount of $300,000 plus such additional amounts as may be imposed for punitive damages." (*Id.* at ¶¶ 91-96, p. 13, ll. 7-9.)

**B.    <u>The Arizona Case</u>**

As noted at the outset of Plaintiff's Complaint in this action, under the hearing "Introduction and Notice of Parallel Proceeding," on March 21, 2024, Plaintiff filed a parallel action in Arizona state court. (Doc. 1, 1:15-25.) Plaintiff amended his complaint in Arizona to add Defendants as parties. (*Id.*) On August 11, 2025, the Arizona court dismissed Defendants for lack of personal jurisdiction. (*Id.*) That action remains pending against Delaportas and Le Nid USA, among others. (*Id.*)

Like the Complaint in this case, the operative First Amended Complaint in the Arizona case asserts claims for fraud, breach of contract, breach of the covenant of good faith and fair dealing arising out of the Consulting Agreement, and certain allegedly fraudulent transfers. (RJN Ex. 2, ¶¶ 20-21, 103, 110-111, 113-115, 117-125.) As in this case, Plaintiff's fraud claim in Arizona is based solely on alleged misrepresentations by Delaportas. (*See id.* at ¶ 103 ["Delaportas, as agent for LNCI, Le Nid USA, Inc. (FLA) and Le Nid USA, Inc. (NM), with the consent and approval of Schuyler and Hodge, made the following statements

5

to Plaintiff prior to the execution of the January 1, 2023 Le Nid Consulting Agreement."]; *see also id.* at ¶¶15-19.) Also like this case, the claims for breach of contract and breach of covenant of good faith and fair dealing in the Arizona case are based on the Consulting Agreement. (*Id.* at ¶¶ 41-43, 110-111, 113-115.) Finally, the fraudulent transfer claims are based on the same UCC filings at issue in this case. (*Id.* at ¶¶ 94-95 [referencing same UCC Financing Statements], 117-125.)

## III.   LEGAL ANALYSIS

### A.   The Court Should Dismiss or Stay the Action Under Colorado River

Under the *Colorado River* doctrine, federal courts may abstain from exercising jurisdiction in favor of parallel state proceedings in the interests of "wise judicial administration." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976) (internal quotation omitted). Exact parallelism is not required. "It is enough of the two proceedings are "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Courts "should be particularly reluctant to find that the actions are not parallel when the federal action is but a 'spin-off' of more comprehensive state litigation." *Id.* at 1417. In the Ninth Circuit, court consider eight factors when determining whether to dismiss or stay actions under Colorado River:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the court.

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

*Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 841-42 (9th Cir. 2017), quoting *R.R. St. & Co. Inc. v. Transport Insurance Co.*, 656 F.3d 966, 978-979 (9th Cir. 2011).

Here, the Arizona case is parallel to this case since this case literally spun-off from that case – it was filed in response to that court's dismissal of Defendants for lack of personal jurisdiction. This action is based on the same facts as the Arizona litigation. Both are based on Delaportas' conduct in negotiating the Consulting Agreement and Le Nid USA's breach of that agreement. (Compare, Doc. 1, ¶¶ 12-18, 24-28 with RJN No. 2, ¶¶ 14-21, 41-42.) In fact, Defendants' liability here is necessarily based on Delaportas' and Le Nid USA's liability in that case since it is predicated solely on Plaintiff's allegations of alter ego and/or conspiracy. (*See* Doc. 1, ¶¶ 43-48, 60, 65, 71-72, 79-80, 87; RJN No. 2, ¶¶ 97-101, 127-129.) Therefore, the cases are "substantially similar" for purposes of Colorado River. *See Rios v. Peterson*, No. 8:21-cv-00063-JVS (KESx), 2021 WL 9315280, at *2 (C.D. Cal. Sept. 15, 2021) (Selna, J.) (case substantially similar to pending state court action where claims are based on the same facts and actions that occurred in state litigation). In analyzing the Ninth Circuit's eight Colorado River factors, it is clear the doctrine should apply to this case.

The first factor does not apply here as there is no specific property at stake. The second factor is also neutral since Defendants reside here and Plaintiff initiated the action here.

The third factor favors abstention since allowing this action to proceed would result in piecemeal litigation. The Arizona action involves the same claims as advanced in this case asserted against the parties who are alleged to be the alter egos or co-conspirators of Defendants in this case. To the extent the defendants in the Arizona prevail, Defendants cannot be liable in this case. Allowing Plaintiff's claims to proceed in this case would waste

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

judicial resources and possibly lead to different results regarding the same underlying claims. *Rios*, 2021 WL 9315280, at *3.

The fourth factor also favors abstention. As set forth in Plaintiff's complaint in this action, he filed the Arizona action on March 21, 2024. This action was filed more than 17 months later, on August 28, 2025. The Arizona case has proceeded well beyond this case: Plaintiff filed a First Amended Complaint in that action (RJN Ex. 4, p. 3 on 12/12/2024), the court ruled on Defendant's motion to dismiss the First Amended Complaint (RJN Ex. 3), and a Notice of Appeal has been filed (RJN Ex. 4, p. 1 on 11/29/2025). This factor weighs in favor abstention. *Rios*, 2021 WL 9315280, at *3.

The fifth factor does not weigh in favor or against the Court maintaining jurisdiction. Here, all of Plaintiff's claims implicate routine issues of state law, such as fraud, breach of contract, and breach of covenant of good faith and fair dealing. Even though the case does not involve federal issues, the routine nature of the state law claims does not weigh against jurisdiction. *See R.R. Street & Co. Inc.*, 656 F.3d at 980-981 ("Because the cases here involve 'routine issues of state law,' such as breach of contract, indemnification and subrogation, this factor does not weigh against jurisdiction.").

The sixth factor favors abstention. "A district court may not stay or dismiss the federal proceeding if the state proceeding cannot adequately protect the rights of the federal litigants." *R.R. Street & Co. Inc.*, 656 F.3d at 981. Here, there is no question the court in Arizona has authority to address the rights and remedies at issue in this case as all of Plaintiff's claims in both cases are based on state law. Therefore, this factor weighs in favor of abstention. *Rios*, 2021 WL 9315280, at *3.

The seventh factor evaluates whether a plaintiff has engaged in forum shopping. Here, Plaintiff brought this action after Defendants were

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

dismissed from the Arizona action for lack of personal jurisdiction. Defendants do not contend this was forum shopping. However, a lack of forum shopping does not weigh against abstention. Accordingly, this factor is neutral.

Finally, the eighth factor weighs in favor of abstention. If this Court were not to abstain, both courts would have to determine whether Delaportas made misrepresentations or omitted material facts from Plaintiff, whether Le Nid USA breached the Consulting Agreement, whether that agreement continued to renew despite Le Nid USA's alleged breach, and the amount of Plaintiff's damages, if any. All of these issues must be resolved before there can be a determination in this case whether Plaintiffs can be liable as alter egos or co-conspirators. In the event the defendants in the Arizona case are not found liable for Plaintiff's claims, then Defendants cannot be liable as alter egos or co-conspirators in this case. Since the Arizona case could resolve this case as well, this factor also weighs in favor of abstention.

Where, as here, all of the *Colorado River* factors are neutral or weigh in favor of abstention, abstention is proper. *See Rios*, 2021 WL 9315280, at *2-4 (action stayed where all *Colorado River* factors neutral or weighed in favor of abstention); *United InvestexUSA 7 Inc. v. Miller*, No. 8:20-cv-02308-JVS-ADS, 2021 WL 6804224, at *3 (C.D. Cal. Nov. 10, 2021) (Selna, J.) (same); *Amin v. Advanced Sterilization Products Services Inc.*, No. SACV 18-1528 JVS (JDEx), 2019 WL 2912862, at *11 (C.D. Cal. Jan. 7, 2019) (Selna, J.) (same); *Lutz v. Securitas Security Services USA, Inc.*, No. SACV 17-00243 JVS (JCGx), 2017 WL 10573990, at *5 (C.D. Cal. Aug. 14, 2017) (Selna, J.) (abstention appropriate where five of eight *Colorado River* factors favor abstention and remining three factors are neutral or irrelevant).

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

Therefore, the Court should grant this motion and abstain from further proceedings until resolution of Plaintiff's claims in the Arizona case.

**B.      The Complaint Should be Dismissed for Failure to State a Claim Against Defendants**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In resolving a Rule 12(b)(6) motion under *Twombly*, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Nor must the Court " 'accept as true a legal conclusion couched as a factual allegation.' " *Id*. at 678–680, quoting *Twombly*, 550 U.S. at 555. Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.

Here, all of Plaintiff's claims fail to state claims on which relief can be granted.

///

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

1. ### The Complaint Fails to Allege a Basis for Alter Ego Liability

Since he cannot allege claims of direct liability against Defendants, Plaintiff seeks to hold Defendants liable as alter egos of Le Nid USA. (*See* Doc. 1, ¶¶ 43-48.) However, Plaintiff fails to properly allege facts supporting alter ego liability in this case.

> It is a fundamental rule that [t]he conditions under which the corporate entity may be disregarded, or the corporation be regarded as the alter ego of the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court. Only general rules may be laid down for guidance.

*Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal.App.2d 825, 836-837 (1963) (citations and internal quotations omitted). "Ownership is a prerequisite to alter ego liability, and not a mere 'factor' or 'guideline.' " *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003), opinion amended on denial of reh'g sub nom. *S.E.C. v. Hickey*, 335 F.3d 834 (9th Cir. 2003); *see also Firstmark Capital Corp. v. Hempel Financial Corp.*, 859 F.2d 92, 94 (9th Cir. 1988) ("Ownership of stock ... is ... a threshold question under California's alter ego doctrine"); *Riddle v. Leuschner*, 51 Cal. 2d 574, 580 (1959) (holding that a managing employee was not the alter ego of a corporation where he did not own the company's stock or have any interest in profits). Here, while the Complaint alleges that Schuyler developed and owned the Crémily line of products (Doc. 1, ¶ 5), it does not allege that she owned Le Nid USA or any other entity. Further, the Complaint is clear that Hodge was not an equity owner of Le Nid USA. (*Id.* at ¶ 43(F).) Therefore, Plaintiff's claims that Defendants are liable as the alter egos of Le Nid USA should be dismissed.

///

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

### 2.   Defendants Cannot be Liable for Conspiracy

Although not clearly articulated, Plaintiff also appears to attempt to allege that Defendants are liable as co-conspirators of Delaportas. (*See* Doc. 1, ¶¶ 60, 65, 73, 80 ("Schuyler, Hodge and Delaportas shared a common plan and design to bring Crémily Products to market. Accordingly, the [tort alleged] by any of them imposes liability on the other two.").) However, Defendants cannot be liable for conspiracy in this case because the Complaint's allegations establish that Defendants and Delaportas were all agents of Le Nid USA. As a result, the agent's immunity rule precludes a finding of liability based on conspiracy. Moreover, Plaintiff has failed to properly allege facts necessary for a conspiracy liability.

"A conspiracy does not stand as an independent claim, rather it is a legal doctrine to establish joint liability by the conspirators for the underlying tort." *Entertainment Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1228 (9th Cir. 1997). "Liability for civil conspiracy generally requires three elements: (1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy." *People v. Beaumont Investment, Ltd.*, 111 Cal.App.4th 102, 137 (2003). In California, "agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." *Black v. Bank of America*, 30 Cal. App. 4th 1, 2 (1994); *see also Sprint Solutions, Inc. v. Cell Wholesale, Inc.*, No. SACV 15-878-JLS (JCGx), 2015 WL 13919095, at *9 (C.D. Cal. Dec. 10, 2015) (holding plaintiffs cannot support claim for conspiracy between company and its corporate officers and employees).

///

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

Plaintiff alleges that Delaportas was engaged by Defendants to organize and manage the Crémily project. (Doc. 1, ¶ 8.) Schuyler supervised Delaportas with regard to product manufacture, quality control, packaging and presentation, while Hodge supervised him with regard to business and financial management of the project.[4] (*Id.* at ¶ 9.) The Crémily enterprise included Defendants, Delaportas, Le Nid USA, Le Nid Consortium International, Inc. (LNCI), and other various other entities. (*Id.* at fn. 1.) Delaportas was the "control person" for the Crémily enterprise. (*Id.* at ¶ 43(I).) As an agent of Le Nid USA and LNCI, Delaportas was authorized to enter into the Consulting Agreement with Plaintiff. (*Id.* at ¶¶ 10-14.) Defendants and Delaportas had a common plan and design to bring the Crémily products to market and to secure Plaintiff's assistance in this endeavor. (*Id.* at ¶¶ 60, 65, 73.) Thus, the Complaint clearly establishes that Delaportas was an agent in Defendants Crémily enterprise acting within his official capacity. As a result, Defendants cannot be liable for conspiracy based on Delaportas' alleged conduct.

Moreover, the Complaint fails to properly allege facts sufficient to support conspiracy claims. As noted above, a conspiracy requires an agreement to commit a wrongful act. *Beaumont Investment, Ltd.*, 111 Cal.App.4th at 137. Here, the only agreement alleged is the "common plan and design to bring Crémily products to market and to secure Plaintiff's assistance in their endeavor." (Doc. 1, ¶¶ 60, 65, 73.) There is nothing wrongful about this plan. Therefore, to the extent Plaintiff is relying on a

---

[4] The Complaint alleges at various other points that Hodge was not an officer or director of Le Nid USA or an authorized person working for or on behalf of Le Nid USA or LNCI. However, that does not mean that Delaportas was not Hodge's agent with regard to the Crémily project as a whole, which is clearly alleged at paragraph 9.

13

conspiracy to hold Defendants' liable, the Complaint fails to properly allege such a claim.

Accordingly, all of Plaintiff's claims based on conspiracy should be dismissed.

### 3.    The Complaint Fails to Allege Fraud or Promissory Fraud

Plaintiff does not allege that he ever communicated directly with either Defendant. Instead, the Complaint asserts claims for common law fraud and promissory fraud based entirely on alleged misrepresentations and omissions by Delaportas. As established above, Defendants cannot be liable for Delaportas' conduct as alter egos or co-conspirators. Nevertheless, even if the Court determines that Defendants could be liable for Delaportas' conduct, the Complaint fails to properly allege either fraud claim.

Under Rule 9(b), a plaintiff must plead each element of a fraud claim with particularity, i.e., the plaintiff "must set forth more than the neutral facts necessary to identify the transaction." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997), quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994). "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). The Complaint's claims for common law fraud and promissory fraud both fail to state a claim.

To plead fraud under California law, a party must allege: "(1) a knowingly false representation or fraudulent omission by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages." *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F.Supp.3d 1092, 1109 (C.D. Cal. 2015). Plaintiff alleges that Delaportas misrepresented that (1) he was the CEO of LNCI

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

and Le Nid USA; (2) Hodge funded the Crémily project with $1 billion; (3) the Consulting Agreement had to be made by Le Nid USA rather than LNCI for accounting purposes; and (4) Le Nid USA's ability to make payments under the Consulting Agreement was secure and guaranteed by Hodge's $1 billion in funding. (Doc. 1, ¶ 50.) Plaintiff also alleges that Delaportas concealed that Le Nid USA was insolvent and Hodge had unfettered ability to withhold funding. (*Id.* at ¶¶ 51-52.) The gist of all these allegations is that Plaintiff relied on Hodge's $1 billion funding of the Crémily project to guarantee his payments under the Consulting Agreement.

"[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." *Guido v. Koopman*, 1 Cal.App.4th 837, 843 (1991). The notion that anyone would contribute $1 billion to a frozen yogurt operations to guarantee its performance is simply incredible. The only conclusion that can be reached is that Plaintiff's alleged reliance on these representations was unreasonable. *Cf. Magnabosco v. Atlantic Richfield Co.*, 45 Fed.Appx. 717, 719 (9th Cir. 2002) ("Simply put, it is manifestly unreasonable to forego vindication of one's rights in reliance on a promise that one's speculative rights will not be violated in the future.").

Moreover, Delaportas alleged representation that Hodge's investment would guarantee payment violates Arizona's statute of frauds. Arizona Revised Statute § 44-101(2) requires that an agreement to charge a person on a promise to answer for the debt on another must be in writing. The Complaint alleges that Plaintiff relied on Delaportas' representation that Le Nid USA's obligation to make payments under the Consulting Agreement would be guaranteed by Hodge's money. (Doc. 1, ¶¶ 50(D), 52.) It was unreasonable for Plaintiff to rely on this representation because such a

///

15

commitment by Hodge was required to be in writing. Therefore, the Court should dismiss the Complaint's common law fraud claim.

Plaintiff's second cause of action for promissory fraud claim also fails. "Promissory fraud is a subspecies of fraud. A plaintiff asserting a promissory fraud claim must plead and prove that the defendant made a promise to him that it had no intention of performing." *UMG Recordings, Inc.*, 117 F.Supp.3d at 1109. "[S]omething more than nonperformance is required to prove the defendant's intent not to perform his promise." *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (1985). Here, Plaintiff alleges that Defendants are liable for promissory fraud based on Delaportas' alleged representations that Le Nid USA was able to fulfill its obligation to pay $10,000 per month under the Consulting Agreement and that those payments were secure and guaranteed by Hodge's funding. (Doc. 1, ¶¶ 15-16, 18, 64.) The Complaint includes conclusory allegations that Le Nid USA could not pay because it was merely a shell and insolvent. (*Id.* at ¶¶ 16, 51.) However, Plaintiff admits that Le Nid USA made the required monthly payments from January 2023 through June. (*Id.* at ¶ 23.) This disproves Plaintiff's allegations that Le Nid USA was unable to pay.

Further, the fact that Le Nid USA stopped performing in July 2023 does not support a finding of promissory fraud. *UMG Recordings, Inc.*, 117 F.Supp.3d at 1110; *see also Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912 IEG (BLM), 2007 WL 2206946, at *6 (S.D. Cal. July 27, 2007) ("In the instant case, the only allegations in the complaint that could demonstrate defendants' fraudulent intent are claims that defendant ultimately did not perform the material terms of the contract. Plaintiffs' reliance on nonperformance as circumstantial evidence of defendants' fraudulent intent at the time of contract formation is misplaced."); *Sunnyside Development Co., LLC v. Opsys Limited*, No. C 05–

16

0553 MHP, 2005 WL 1876106, at *5–6 (N.D. Cal. Aug. 8, 2005) ("[T]he mere fact that a party breaches a promise to perform a condition of contract is as a matter of law insufficient to give rise to an inference that the breaching party acted with fraudulent intent at the time that the promise was made."); *Smith v. Allstate Insurance Co.*, 160 F.Supp.2d 1150, 1153-1154 (S.D. Cal. 2001) (merely alleging that defendant breached a contract did not adequately plead that it entered into the agreement with no intent to perform). In fact, the Complaint alleges why Le Nid USA stopped making payments. As alleged, in the summer of 2023, a dispute arose between Delaportas and Hodge based on accusations that Delaportas had mismanaged and wasted Hodge's money. (Doc. 1, ¶ 24.) As a result, Hodge demanded restructuring of LNCI's work force, management, and operations in order to significantly reduce operational costs. (*Id*. at ¶ 25.) Only then did Hodge instruct Delaportas to stop making payments to Plaintiff. (*Id*. at ¶ 26.) Thus, as alleged, Le Nid USA's failure to make payments was due to corporate restructuring, not any intent not to perform at the time Le Nid USA entered into the Consulting Agreement. Therefore, Plaintiff's promissory fraud claim should also be dismissed.

### 4.   Defendants Cannot be Liable for Breach of Contract

The Complaint alleges that Schuyler is liable for Le Nid USA's breach of the Consulting Agreement under alter ego principles (Doc. 1, ¶ 71) and appears to allege that both defendants are liable for conspiracy to breach the contract (*Id*. at ¶ 73). But as established above, neither of those provides a basis for liability.

The Complaint also alleges that Hodge is liable because he was "instrumental in the preparation, execution and breach of the Consulting Agreement." (*Id*. at ¶ 72.) However, the longstanding rule in Arizona is that "only parties to a contract are subject to or may enforce its terms."

17

*Sierra Tucson, Inc. v. Bergin*, 239 Ariz. 507, 510 (2016). Neither Schuyler nor Hodge were parties to the Consulting Agreement. Therefore, Defendants cannot be liable for Le Nid USA's breach of contract. As a result, the Court should dismiss this claim.

**5.    The Complaint Fails to Allege a Claim for Breach of Covenant of Good Faith and Fair Dealing**

Plaintiff alleges that Defendants breached the covenant of good faith and fair dealing by virtue of their common plan to bring Crémily products to market. (Doc. 1, ¶ 80.) But Defendants cannot be liable for conspiracy to breach the covenant of good faith and fair dealing because they were not legally capable of committing that tort. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511 (1994) ("By its nature, tort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty."). Specifically, Defendants were not parties to the Consulting Agreement. (*See* RJN Ex. 1 [Consulting Agreement is between Plaintiff and Le Nid USA].) As a result, they were not subject to an implied duty of good faith and fair dealing. *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 576 (1973) ("non-insurer defendants were not parties to the agreements for insurance; therefore, they [were] not, as such, subject to an implied duty of good faith and fair dealing"). Therefore, this claim should be dismissed.

Moreover, the Complaint fails to properly allege a claim for breach of the covenant. Both California and Arizona courts recognize an implied covenant of good faith and fair dealing in every contract. *See, e.g., Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1393 (1990); *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 383 (1985). The "implied covenant imposes upon each party the obligation to do

18

everything that the contract presupposes they will do to accomplish its purpose." *Schoolcraft v. Ross*, 81 Cal.App.3d 75, 80 (1978); *see also Wagonseller*, 147 Ariz. at 383 ("The covenant requires that neither party do anything that will injure the right of the other to receive the benefits of their agreement."). Here, Plaintiff alleges that Le Nid USA breached the covenant by entering into the contract with no ability to pay or intent to perform its obligations and then subsequently encumbering its assets with UCC liens. Neither of these constitute and actionable tort as a matter of law.

First, the covenant does not require parties to negotiate in good faith, but rather only requires that the parties operate in good faith in performing the contract. For instance, in *McClain v. Octagon Plaza, LLC*, 159 Cal.App.4th 784 (2008), the plaintiff alleged that the defendant breached the covenant by making false representations during contract negotiations. The Court of Appeal held that those allegations failed to state a claim because "the implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." *Id.* at 799. *See also Johnson International, Inc. v. City of Phoenix*, 192 Ariz. 466, 474 (1998) (ruling that obligation imposed by covenant of good faith and fair dealing "presumes the existence of a valid contract."). Thus, even if Le Nid USA entered into the Consulting Agreement without the ability or intent to perform, that did not breach the covenant of good faith and fair dealing.

Second, the UCC liens about which Plaintiff complains were not put in place until ***after*** Le Nid USA is alleged to have breached the Consulting Agreement. As alleged in the Complaint, Le Nid USA breached the contract when it failed to pay Plaintiff in July 2023. (Doc. 1, ¶ 26.) However, the Complaint alleges that the UCC lines were granted in February and May 2024, months after the alleged breach of contract.

19

As noted above, the purpose of the covenant is to protect the parties' rights to receive the benefits of their agreements. Plaintiff stopped receiving the benefits of the contract when Le Nid USA stopped paying in July 2023. While subsequent liens on Le Nid USA's property could complicate Plaintiff's efforts to recover for Le Nid USA's breach of contract, those liens did not frustrate the purpose of the contract or injure Plaintiff's right to receive the benefits of the contract. Therefore, the Complaint fails to allege a claim for breach of the covenant of good faith and fair dealing.

For these reasons, the Court should dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing.

### 6.  Plaintiff Cannot Assert a Claim Against Hodge for Intentional Interference with Contract

Plaintiff alleges that Hodge interfered with the Consulting Agreement when he directed Delaportas to stop making payments to Plaintiff under the agreement. (Doc. 1, ¶ 85.) In ruling on this issue, the Court can consider the terms of the Consulting Agreement, referenced as Exhibit 1 to the Complaint but not attached. *See, e.g., Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (observing that a court "may consider" evidence that is incorporated by reference); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that the incorporation doctrine "permits" the court to consider extrinsic documents); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (explaining that a document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim"). In light of Plaintiff's allegations and the terms of the Consulting Agreement, this claim fails.

In California, claims for intentional interference with an at-will contract by a third party, a plaintiff must allege that the defendant engaged in an independently wrongful act. *Ixchel Pharma, LLC v. Biogen, Inc.*,

20

9 Cal.5th 1130, 1148 (2020). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1142, quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1159 (2003). The Consulting Agreement was an at-will contract. (*See* RJN No. 1, p. 1 ["This contract can be terminated by any party at any time."].) The Complaint alleges that Hodge interfered with the Consulting Agreement when he "instructed Delaportas to stop making retainer payments to Plaintiff." (Doc. 1, ¶ 85.) However, instructing Delaportas to stop making payments is not independently wrongful. Plaintiff fails to allege facts that would render Hodge's conduct unlawful. Therefore, the Complaint fails to state a claim for intentional interference with contract and should be dismissed.

## C.    The Complaint Should be Dismissed for Failure to Add a Necessary Party

Rule 12(b)(7) provides that a defendant may file a motion to dismiss if a plaintiff fails to join a necessary party under Rule 19.

> Under Rule 19, if joinder will not destroy subject-matter jurisdiction, an absent person must be joined if (a) the Court cannot afford complete relief among the existing parties without that person, or (b) that person has an interest in the litigation, and proceeding without that person would impair their ability to protect the interest, or cause an existing party to incur double or inconsistent obligations because of the interest. If an entity's presence is critical to the disposition of important issues in the case, and/or its evidence will either support the complaint or bolster the defense, it is a necessary party.

*In re Toyota Motor Corp.*, 785 F.Supp.2d 883, 904 (C.D. Cal. 2011) (internal citations omitted). Pursuant to Rule 19(b),

> If a person who is required to be joined, if feasible, cannot be joined, the Court must determine whether, 'in equity and good conscience, the action should proceed among the existing parties or should be dismissed.' Fed.R.Civ.P. 19(b). To make this determination, the Court should consider: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or

21

avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id*. "Under some circumstances, an absent party's contract rights may give it a legally protected interest in an action." *Ward v. Apple Inc*., 791 F.3d 1041, 1053 (9th Cir. 2015). In particular, "it is well established that all parties to a contract are necessary in an action to set aside a contract." *Id*.

Here, Plaintiff's sixth cause of action alleges that certain UCC liens by Schuyler and others constituted fraudulent conveyances. (Doc. 1, ¶¶ 40-41, 91-92.) The liens were made in favor of CT Corporations System "as representative." (*Id*. at ¶ 41.) Plaintiff seeks avoidance of these liens to the extent necessary to satisfy Plaintiff's claims for damages. (*Id*. at p. 13, ll. 7-9.) As with parties to a contract that is sought to be set aside, CT Corporations System and the secured parties under the liens are necessary parties in this action. Therefore, this claim should be dismissed unless and until these necessary parties are added to this case.

## IV.   <u>CONCLUSION</u>

For all of the forgoing reasons, Defendants' motion to dismiss should be granted in its entirety and without leave to amend. To the extent Plaintiff is granted leave to amend or any claims remain, the Court should stay the action pending resolution of the Arizona case.

DATE: January 28. 2026                    PEREZ VAUGHN & FEASBY Inc.


                                          /s/Jeffrey A. Feasby
                                          Jeffrey A. Feasby
                                          Evan C. Flores
                                          Attorneys for Defendants
                                          Kylie Schuyler and Douglas Hodge

22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for defendants Kylie Schuyler and Douglas Hodge certifies that this brief contains 6,773 words in compliance with the word limit of L.R. 11-6.1.

/s/Jeffrey A. Feasby
Jeffrey A. Feasby

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR STAY ACTION