P. Kristofer Strojnik, SBN 242728
pstrojnik@strojniklaw.com
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
415-450-0100 (tel.)

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER STROJNIK,<br><br>Plaintiff,<br><br>vs.<br><br>KYLIE SCHUYLER et al.,<br><br>Defendants. | Case No: 8:25-cv-01944-JVS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND/OR STAY ACTION** |

Defendants' Motion should be denied. Nonsensically, Defendants ask the Court to preclude Plaintiff from litigating valid cause of action(s) *in any court* after an Arizona court denied personal jurisdiction over the current California defendants. Below, Plaintiff provides clarity and sense to an otherwise meritless Motion. As for the failure to state a claim arguments, an Arizona court previously ruled that Plaintiff has stated a claim, but it just lacked personal jurisdiction over these California Defendants.

I.    **INTRODUCTION**

A.  **The Cremily Project, LNCI, Le Nid USA, and the Consulting Agreement At Issue**

The gravamen of the instant Complaint is that an Arizona Plaintiff entered into a Consulting Agreement with a shell company that was the alter ego of Defendants Schuyler and Hodge. Plaintiff filed suit in Arizona, but the Arizona court lacked personal

jurisdiction over these California Defendants. Accordingly, Plaintiff sued these California Defendants here in California because there is no other court to provide relief; *except, this case adds another cause of action – interference with contractual relations*.[1]

Plaintiff filed suit against Defendants Schuyler and Hodge ("Defendants") in Arizona under case number CV2024-006019. (the "Arizona case") for the same causes of action alleged here…*except Plaintiff added an interference with contractual relations claim in this case*. Doc. 1 at 1:15-25; Exhibit 1 (Arizona Complaint). In the Arizona case, Defendants filed a motion dismiss for failure to state a claim under and for lack of personal jurisdiction pursuant to Rules 12(b)(2) and 12(b)(6). The 12(b)6) motion was denied, but the Court ruled it lacked personal jurisdiction. *See* Exhibit 2 (Arizona order). Plaintiff appealed the Arizona decision to the Arizona Court of Appeals, case number 1 CA-CV 25-1057, which is currently pending. Since Plaintiff had no recourse against these California Defendants in Arizona, he filed the instant claim in California *with the added claim for Interference With Contract* (Count 5). Doc. 1.

For context, the basis for the Arizona case before it was dismissed and this case concerns the involvement of Plaintiff, an Arizona man, Steven Delaportas (an Arizona man acting as agent for these California Defendants) and California Defendants Schuyler and Hodge, and the latters' use of a shell company called Le Nid USA Inc. to enter into a Consulting Agreement with Plaintiff for the express purpose of limiting their personal liability. Respectfully, all of the parties concerned, except for Ms. Schuyler and Plaintiff, are convicted "white collar" felons.

Defendant Schuyler created a product called Cremily Yogurt, which she sought to manufacture and distribute in the retail market. Her husband, Defendant Hodge, who is beyond wealthy, agreed with his wife to fund the Cremily Project. Since neither Hodge nor Schuyler had expertise in the retail market, they enlisted an Arizona man (Steven Delaportas) to develop, manufacture and distribute the Cremily Yogurt. As part of this

---

[1] The addition of the Interference With Contact claim defeats the Colorado River defense that Defendants posit since it defeats complete parallelism between the two cases.

business dealing, Hodge funded Le Nid Consortium Inc. ("LNCI") in the amount of $1B, or so Plaintiff was led to believe.

In or around late 2022, Delaportas, acting as agent of Defendants Hodge and Schuyler and at their direction, sought to retain Plaintiff to provide business and consulting services as part of the Cremily Project. Plaintiff agreed to provide such services and was excited to be part of the Cremily team. Delaportas, at the direction of Defendants and as their agent, asked that the Consulting Agreement be executed not by LNCI, which Delaportas represented was funded to the tune of $1B, but by Le Nid USA for "accounting purposes." At the time, Plaintiff has no reason to not believe or even suspect the "accounting purposes" was a ruse, and so Plaintiff executed the Consulting Agreement with Le Nid USA. The relevant terms were $10,000.00 per month, on-call provision of consultation, one-year term, and it would be extended for subsequent one-year terms if neither party gave notice of termination by October 31 of the then-contract year. Unbeknownst to Plaintiff and acting on Delaportas' representations, which were directed by Defendants Schuyler and Hodge, Le Nid USA was a shell company with no funding, no minutes, no offices and no "nothing."

During the first six months of the Consulting Agreement, which Plaintiff entered into with Le Nid USA and not the funded LNCI for "accounting purposes," Plaintiff was paid his $10k per month … not by Le Nid USA, *but by LNCI*. However, Plaintiff was not paid for the seventh month, eighth month, ninth month and so on. Although Le Nid USA did not give notice of termination, which thereby continued the Agreement for an additional year, and although Plaintiff remained available to perform under the Consulting Agreement, Le Nid USA stopped performing. In other words, Le Nid USA, which was not funded, kept no minutes, had no offices, and was the classic alter ego entity, breached.

In late 2023, Plaintiff approached Arizona man Delaportas about the non-payments, and the two men met. During their meeting, and at the direction of California Defendants Schuyler and Hodge, a settlement was reached for the breach. Again, at the

direction of Schuyler and Hodge, that settlement was never performed. After that, Le Nid USA, LNCI and Schuyler filed a UCC-1 Financial Statement with the Arizona Secretary of State pledging all of their assets in favor of an undisclosed secured third party in order to cement Plaintiff's inability to recover. And since Le Nid USA was the contracting party, and because Le Nid USA was a shell entity with no money, no minutes, no anything, Defendants believed they could get away with not paying Plaintiff. The instant Complaint seeks payment.

**B. Why Defendants' Arguments Have No Merit and is Continuation of the Scheme to Defraud Plaintiff**

Defendants first argue that the Court should stay this case to allow the Arizona case (which continues against Arizona defendants subject to Arizona jurisdiction) to fully resolve against the remaining Arizona defendants pursuant to the Colorado River Abstention Doctrine. However, this argument fails in large part because the Arizona case was dismissed as to California Defendants for lack of personal jurisdiction. But assuming that was not the case, there is no complete parallelism between the Arizona case and this one … *this case adds a cause of action never alleged in the Arizona case – Interference With Contract*.  So therefore, even though Plaintiff is currently appealing the dismissal for lack of personal jurisdiction, complete parallelism cannot be achieved for Colorado River to apply.

Defendants next argue that the entirety of the instant claim should be dismissed for failure to state a claim, which is a motion that was unsuccessful in the Arizona case. Exhibit 2. But Plaintiff's Complaint here provides a detailed factual and chronological allegations that fully and completely comply with Rules 8(a) and 9(b) under the "plausibility" standard of *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

4

Defendants' final argument is that under the Arizona's Uniform Fraudulent Conveyance Act, the secured party is a necessary party to an action by Plaintiff (Creditor) against Schuyler (Debtor). Plaintiff conditionally agrees that the unknown secured party should be added as a party defendant once Defendants, as debtors, have identified it, but since Schuyler and Hodge were dismissed from the Arizona case, Plaintiff has been unable to discover who the secured party is in discovery. Additionally, Schuyler did not disclose who the secured party is in the UCC Financing Statement,[2] and so it is a mystery as to who the secured party is, and Plaintiff has no recourse. Plaintiff respectfully requests the opportunity to engage in discovery here and thereafter add the secured party as indispensable Defendant party.

## II.  FACTUAL BACKGROUND

### A.  California Defendants Schuyler and Hodge Retained Arizona Man Steven Delaportas to Manage the Retail of Defendant's Frozen Yogurt Product

Defendant Schuyler developed a recipe for Cremily French Frozen Yogurt and desired to bring them to the retail market ("Cremily Project"). Doc. 1 at ¶5. Lacking the funding necessary to develop the Cremily Project, Defendant Hodge (Schuyler's husband) agreed to finance the Project for the sum of $1 billion. *Id*. at ¶¶7, 12.

Schuyler and her husband, Hodge, collectively lacked the experience in the food manufacturing, marketing and distribution business and therefore, in or around 2020, engaged an Arizona man named Steven Delaportas to organize and manage the Crèmily Project. *Id*. at ¶8. Schuyler was principally in charge of supervising Delaportas with respect to Crèmily Products' manufacture, quality control, packaging and presentation, while Hodge, as funder, was principally in charge of supervising Delaportas' business and financial management of the Crèmily Project. *Id*. at ¶9. In or about 2022, Defendants leased office space in Scottsdale, Arizona as headquarters (the "Scottsdale offices"). On

---

[2] The UCC Financing Statement did disclose CT Corporation System as the "representative" of the secured party, but the secured party was not identified.

information and belief, the Schuyler-controlled entity Le Nid Consortium International Inc. ("LNCI ") was the lessee of the Scottsdale offices. *Id*. at ¶10.

**B. As Agent for Defendants, Delaportas Enters Into Consulting Agreement With Plaintiff**

At the time of recruitment, Delaportas represented to Plaintiff that he sought to retain Plaintiff to resolve some conflicts that had arisen within LCNI. Delaportas, the agent of Schuyler and Hodge, further (mis)represented, (a) that Delaportas was hired by California residents Schuyler and Hodge to help them in the manufacture, marketing, sales and distribution of Crèmily Products, (b) that Delaportas was the CEO of LNCI and its "related" entity Le Nid USA, Inc., (c) that Schuyler and Hodge are husband and wife, and (d) that Hodge funded the Crèmily Project with a $1B ($1,000,000,000) fund. *Id*. at ¶12.

Following initial discussions, Delaportas confirmed to Plaintiff that Schuyler and Hodge authorized Delaportas to execute a Consulting Agreement with Plaintiff, which would pay Plaintiff $10,000.00 per month. *Id*. at ¶13. Immediately prior to the execution of the Consulting Agreement, however, Delaportas advised Plaintiff that Schuyler and Hodge required the Consulting Agreement to be made between Plaintiff and Le Nid *USA*, Inc. and not between Plaintiff and LNCI  "for accounting purposes". *Id*. at ¶14 (the gravamen of the instant lawsuit is that the "accounting purposes" was in fact a scheme to breach the contract at any time to protect LNCI, which was funded whereas Le Nid USA was not funded). Delaportas further advised Plaintiff that the Consulting Agreement with Le Nid *USA*, Inc. was financially secure because the entire Crèmily Project was funded by Hodge with $1B. *Id*. at ¶15. Delaportas did not disclose that Le Nid *USA*, Inc. was a shell company with no ability or intent to pay the $10,000.00 monthly retainer fee to Plaintiff. *Id*. at ¶16. Plaintiff reasonably relied on Delaportas' representations, concealment, and non-disclosures, who in turn was acting on Defendants' representations as their agent. *Id*. at ¶17.

Based on Delaportas' representations and assurances that Le Nid *USA*, Inc. was able to fulfill its contractual obligations, Plaintiff entered the Consulting Agreement effective January 1, 2023. *Id*. at ¶18; Doc. 4 at Ex. 1. The Consulting Agreement was an "on call" retainer agreement at $10,000 per month for a period for one year, with automatic one-year extensions if neither party gave notice of non-extension by October 31 the prior year. The Consulting Agreement was to be "governed and construed in accordance with the laws of the State of Arizona". Plaintiff was instructed to submit his invoices to LNCI however, <u>not</u> the contracting party Le Nid *USA* Inc. *Id*. at ¶20.

In late 2022 and into 2023, Delaportas hired employees and vendors, he negotiated contracts with third party vendors and contractors, and managed various Crèmily-Lenid companies into what became known as the Crèmily – Le Nid Enterprise. *Id*. at ¶21. During this period, Plaintiff timely and competently provided services and strategic guidance as requested. *Id*. at ¶22. LNCI made payments to Plaintiff each month between January and June 2023. *Id*. at ¶23.

C. **Hodge Instructs Delaportas to Cease Paying Plaintiff**

During the Summer of 2023, a conflict developed between Delaportas and Hodge over Delportas' alleged misuse of Hodge's funding of the Crèmily Project. *Id*. at ¶24. Hodge demanded a restructuring of the workforce, management and operations of LNCI, and as a result, LNCI significantly reduced its workforce and operational costs. *Id*. at ¶25. Effective July 1, 2023, Hodge instructed Delaportas to cease making retainer payments to Plaintiff. ¶26. At this time, Hodge was not an officer, director or authorized person working for or on behalf of Le Nid *USA*, Inc. or LNCI. *Id*. at ¶27. Delaportas complied with Hodge's instructions and payments to Plaintiff stopped. *Id*. at ¶28. Although payments to Plaintiff stopped, the Consulting Agreement was automatically extended in October 2023 since, pursuant to the terms of the Agreement, no party had given notice of termination. *Id*. at ¶29.

7

On November 21, 2023 and in an effort to mitigate his damages, Plaintiff Delaportas met to discuss a resolution of Le Nid USA's 's breach of the Consulting Agreement. *Id*. at ¶30. Acting on behalf of Defendants, Delaportas stated to Plaintiff that Schuyler and Hodge wanted to settle Plaintiff's claim for breach of contract and related claims and conceded that payments had ceased at Hodge's direction. *Id*. at ¶¶31-32. At that meeting, Delaportas admitted and acknowledged that the Consulting Agreement remained in effect, that Le Nid *USA*, Inc. breached it, and that Plaintiff was due the monthly retainers from July of 2023 to December 31, 2024 in the sum of $180,000.00 (non-payment from July 2023 through December 2023, and an additional 12 months of payment since the Agreement had not been terminated by deadline set forth in the Agreement). *Id*. at ¶33. The claim was not settled after that meeting.

On December 4, 2023, Plaintiff and Delaportas met again to discuss settlement of claims between Plaintiff on one hand and Schuyler, Hodge, Le Nid *USA*, Inc., Delaportas et al. *Id*. at ¶35. At this meeting, a settlement was reached, which was immediately breached. *Id*. at ¶¶36-37. No further talks occurred; instead, litigation ensued.

### D. **Schuyler and Other Le Nid Entities Fraudulently Conveyed Their Assets**

On February 27, 2024, LNCI granted to Schuyler a UCC lien encumbering all of its assets as documented in UCC Financing Statement No. 2024-000-0849-0 filed with the Arizona Secretary of State. *Id*. at ¶40. On May 30, 2024, the following persons and entities liened all of their assets to CT Corporation System "as representative" and as documented in UCC Financing Statement No. 2024-002-4478-3: **LNCI**, , Le Nid Intellectual Property Inc., Le Nid Brands Inc., Crèmily, Inc., Le Nid Holdings, Inc., Superfrutas Beverage Company, Inc., Le Nid Technologies, Inc., Le Nid Bottling, Inc., Le Nid, Inc., **Le Nid USA, Inc.,** The Crèmily Foundation, Le Nid Asia, Inc., and **Kylie Schuyler**. *Id*. at ¶41. Two days later, on Saturday, June 1, 2024, Delaportas and the entire Crèmily – Le Nid Enterprise vacated the Scottsdale offices and ceased operations. *Id*. at ¶42.

8

### E. Le Nid USA was a mere Instrumentalies and Alter Ego of Defendants

There was such a unity of interest and ownership between Le Nid USA, Inc. and Schuyler that it no longer existed as a separate entity because, at the time of the execution of the Consulting Agreement, Le Nid USA, Inc. *(1)* was not authorized to conduct business in Arizona, *(2)* failed to properly maintain corporate records, *(3)* conducted no known business other than to contract with Plaintiff, *(4)* had no paid employees, *(5)* had no money to pay Plaintiff (LNCI paid him), *(6)* permitted Hodge, who was not an officer, director or equity holder and not authorized to conduct its affairs, to instruct Delaportas to enter into and cease making payments under the Consulting Agreement, *(7)* was not the true beneficiary of the Consulting Agreement; LNCI and Defendants were, *(8)* authorized Delaportas to hold himself out as CEO despite not being CEO, and (9) is a member of the so-called Cremily – Le Nid Enterprise and share Schuyler as the common officer and director and Delaportas as the actual control person. *Id*. at ¶43.

### F. Failure to disregard the corporate veil would result in fraud or injustice

*(1)* In the last moment prior to the execution of the Consulting Agreement between Plaintiff and Le Nid Consortium, Hodge instructed Delaportas to enter the consulting agreement between Plaintiff and Le Nid *USA*, Inc. and stated to Plaintiff that this would be done "for accounting purposes" only, *(2)* Defendants and Delaportas induced Plaintiff to enter the consulting agreement allegedly for "accounting purposes" when in fact the purpose was to shield Schulyer, Delaportas, and Hodge from liability, *(3)* Defendants knew that Le Nid *USA*, Inc. was insolvent and had no intent or ability to pay the monthly retainers to Plaintiff, and (4) Unless the corporate veil of Le Nid *USA*, Inc. is lifted, Defendants Schuyler and Hodge would benefit from Plaintiff's services and Plaintiff would be harmed by the breach because Le Nid *USA*, Inc. was/is insolvent. *Id*. at ¶44

**III.    CLAIMS AGAINST SCHUYLER AND HODGE**

    **A.  <u>Count One: Fraud, Concealment and Non-Disclosure</u>**

Count One alleges that Delaportas, working at the direction of and in concert with Schuyler and Hodge, made the following misrepresentations to Plaintiff: *(1)* That he (Delaportas) was the CEO of LNCI and Le Nid USA, Inc., *(2)* That Hodge funded the Crèmily Project with a $1B ($1,000,000,000) fund, *(3)* The Consulting Agreement had to be made between Plaintiff and Le Nid USA, Inc. and not between Plaintiff and LNCI "for accounting purposes"; and, *(4)* Le Nid USA, Inc.'s performance was secure and guaranteed with Hodge's funding of $1B. ¶50.

Defendants and Delaportas also actively concealed the material fact that Le Nid USA, Inc. was insolvent and had no ability or intention to fulfill its contractual obligations. *Id*. at ¶51. Defendant and Delaportas made partial representations about Le Nid USA, Inc.'s ability to make payments from Hodge's $1B funding but suppressed the material facts that Hodge had unfettered ability to withhold funding. *Id*. at ¶52. These representations in totality were false, and Defendants knew they were false with the intent to induce Plaintiff's reliance in the execution of the Consulting Agreement. *Id*. at ¶55. Plaintiff justifiably relied on the misrepresentations and concealment of material facts. *Id*. at ¶56. Had Plaintiff been aware that these representations, concealments of material facts, and partial representations were false, he would not have entered the Consulting Agreement without further assurances of Le Nid USA, Inc.'s ability to perform. *Id*. at ¶57. Plaintiff has been damaged by Defendant's false representations, concealment of facts, and partial disclosures.  *Id*. at ¶58. Plaintiff has been damaged in the amount of unpaid monthly retainers from July 2023 to December 2025 in the amount of no less than $300,000.00. *Id*. at ¶59. Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market. Accordingly, the fraud committed by any of them imposes liability on the other two. *Id*. at ¶60. Defendants were guilty of oppression, fraud or malice; therefore, pursuant to California Civil Code §3294(a), Plaintiff seeks imposition of punitive damages. *Id*. at ¶61.

## B. <u>Count Two: Promissory Fraud and Fraud in the Inducement.</u>

Count Two alleges that Defendants and Delaportas fraudulently induced Plaintiff to enter into the Consulting Agreement with Le Nid USA, Inc. as alleged above. *Id*. at ¶63.  Plaintiff was induced to enter the Consulting Agreement with Le Nid USA, Inc. by making promises they did not intend to keep since Le Nid USA, Inc. was unable to perform. *Id*. at ¶64. Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market. Accordingly,  the promissory fraud committed by any of them imposes liability on the other two. *Id*. at ¶65. Punitive damages are properly alleged. *Id*. at ¶66. Damages are properly alleged. *Id*. at ¶67.

## C. <u>Count Three: Breach of Consulting Agreement</u>

Plaintiff alleges the execution of the consulting agreement, the breach of the consulting agreement and damages. Plaintiff also alleges a settlement agreement, the breach thereof, and damages. The breach of contract claims are properly alleged.

## D. <u>Count Four: Breach of Covenant of Good Faith and Fair Dealing</u>

Count Four alleges that the Consulting Agreement is to be "governed and construed in accordance with the laws of the State of Arizona". ¶76.  Arizona law implies a covenant of good faith and fair dealing in every contract. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 383, 710 P.2d 1025, 1038 (1985). Le Nid USA, Inc. breached the covenant of good faith and fair dealing by knowingly entering into a contractual relationship with Plaintiff with no ability or intent to perform its obligations, and did so with specific instructions from Schuyler, Hodge and Delaportas, and by entering into a UCC financing statement encumbering all their assets in favor of a third party. *Id*. at ¶78. Defendant Schuyler is liable under the alter ego principles as stated above. *Id*. at ¶79. Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market. Accordingly, the breach of the covenant of

good faith and fair dealing by any of them imposes liability on the other two. *Id*. at ¶80. Conspiracy, resulting damages and punitive damages are properly alleged.

### E. Count Five: Intentional Interference with Contract *(New Claim Not Alleged in Arizona)*

Count Five reiterates that the Consulting Agreement existed between Le Nid USA, Inc. and Plaintiff. Doc. 1 at ¶83. Defendants and Delaportas were aware of the Consulting Agreement. *Id*. at ¶84. In or about July of 2023, Hodge, who was not a party to the Consulting Agreement,  instructed Delaportas to stop making retainer payments to Plaintiff. *Id*. at ¶85. Delaportas complied with Hodge's instructions and stopped making payments to Plaintiff. *Id*. at ¶86. Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market. Accordingly,  the interference with contract alleged here imposes liability of Schuyler. *Id*. at ¶87 Punitive and consequential damages are properly alleged. *Id*. at ¶88, 89.

### F. Count Six: Fraudulent Conveyance

Count Six alleges that on May 30, 2024, Schuyler, LNCI and Le Nid USA, Inc. liened all their assets in favor of  CT Corporation Systems, "as representative". Doc. 1 at ¶91. UCC lien conveyances alleged in ¶¶43-45 constituted fraudulent conveyances under ARS §44-1001, *et. seq. Id. at* ¶92. The UCC encumbrances were made with actual intent to hinder, delay or defraud. *Id*. at ¶93.  The UCC encumbrances were made without LNCI, Le Nid USA, Inc. or Schuyler receiving reasonably equivalent value in exchange. *Id*. at ¶94. Defendants were consciously aware of the wrongfulness or harmfulness of their conduct and intentionally acted in deliberate contravention to the rights of the Plaintiff. *Id*. at ¶95. Punitive damages are properly alleged. *Id*. at ¶96.

## IV.   LEGAL ANALYSIS

### A. *Colorado River Abstention* is Inappropriate Here

"Generally, ... the rule is that `the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having

jurisdiction.'" *Colorado River Water Conservation District v. United States* (*Colorado River*), 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). (quoting *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910)). A stay of federal litigation in favor of state court proceedings "is the exception, not the rule." *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236. "Only the clearest of justifications will warrant" a stay, *id.* at 819, 96 S.Ct. 1236, and the circumstances justifying a stay are "exceedingly rare," *Smith v. Cent. Ariz. Water Conservation District,* 418 F.3d 1028, 1033 (9th Cir. 2005)

The Supreme Court has made clear that a *Colorado River* stay is proper only in "exceptional circumstances." *Id.* at 813, 96 S.Ct. 1236. Absent such circumstances, federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Id.* at 817, 96 S.Ct. 1236. "Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have *nothing further to do* in resolving any substantive part of the case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.* (*Moses Cone*), 460 U.S. 1, 28, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis added).

The primary *and* ultimate question is whether the state proceedings may or may not "fully resolve the issues pending before the district court". *Ernest Block,* 76 F. 4th at 843, citing to *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). If the State Court proceedings "may not fully resolve the issues pending before the district court", the Colorado River Abstention is unavailing.

Here, there is no action pending in the Arizona case that will resolve any issues between Plaintiff and Defendants Schuyler and Hodge. Defendants Schuyler and Hodge have been dismissed from the Arizona case. Additionally, even if they had remained parties in the Arizona case, the existence of complete parallelism would defeat the abstention because in the instant action, Plaintiff for the first time brings a direct claim against Defendant Hodge for Intentional Interference with contract.

While it is true that the Arizona case's dismissal of Defendants Schuyler and Hodge is on appeal, this circumstances changes nothing.  In *Ernest Bock, LLC v. Steelman*, 76 F. 4th 827 (9th Cir 2023) the 9th Circuit Court of Appeals discussed a similar fact pattern. There, Ernest Bock, LLC ("Bock") initially obtained an $11.8 million judgment for breach of contract against Defendants Paul and Maryann Steelman ("Steelman") in a New Jersey state court. Bock then filed a federal suit in the District of Nevada, alleging that the Steelmans, assisted by other named Defendants, engaged in an elaborate series of improper asset transfers to insulate those assets from the New Jersey judgment in violation of Nevada's fraudulent transfer act Nev. Rev. Stat. § 112.150(12). While the federal suit was pending, a New Jersey appellate court vacated the underlying judgment and remanded for further proceedings, including discovery, to determine whether the Steelmans were liable to Bock.

The district court stayed the case pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). The district court first determined that both the state and federal lawsuits turn on the same question of New Jersey law —whether the Steelmans are liable for breach of contract. The court then stayed the federal case, in part because it would be inefficient for both suits to proceed simultaneously. The 9th Circuit Court of Appeals reversed, relying on *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) because the state proceeding "may not fully resolve the issues pending before the district court". *Ernest Block,* 76 F. 4th at 843.

The *Ernest Bock* case resolves two issues:  First, that while a state court action is on appeal, there is no Colorado River abstention. Second, nothing changes even if the appeal remands the case back to the trial court for a new trial. Accordingly, Colorado River does not apply here because (a) there is no complete parallelism, and (b) current Defendants are not parties in the Arizona case.

**B.  The Complaint Alleges Plausible Claims for Relief**

14

Motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) test the legal sufficiency of the claims asserted in a complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Subject to Rule 12(b)(6), the Court reviews the complaint for facial plausibility. *See Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)..." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citations and footnote omitted).

The Arizona case previously considered, and denied, Defendants' Schuyler's and Hodge's similar Rule 12(b)(6) motion to dismiss Plaintiff's claims there, which are the same here (except the Arizona court denied personal jurisdiction). Exhibit 2. For clarity, Plaintiff attaches First Amended Complaint filed in the State Court Action as Exhibit 1 and requests judicial notice.

When addressing the same motion here, the Arizona court used Arizona's 12(b)(6) standard that is indistinguishable from the Federal standard. Exhibit 2. The difference between federal and state standard is linguistic, not substantive: Arizona standard provides that a claim is well pled if "under any facts [the claim] is susceptible of proof" of a claim, while under federal law the claim is well pled if it alleges factually "plausible proof". The distinction between "susceptible of proof" and "plausible" is semantic. The term "susceptible" refers to the capacity of proof, while "plausible" refers to the believability of such proof. The Arizona court's denial of the Motion to Dismiss because Plaintiff's allegations were "susceptible of proof". Here, Federal Court is asked

15

whether the allegations amount to "plausible" proof of claim. If the claims are "susceptible of proof", they are ipso facto "plausible".

The State Court's denial of Schuyler's and Hodge's motion to dismiss was made between the same parties arguing the same issues using indistinguishable standards of review, except in this case there is an added claim for Interference With Contract. This fact is "relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion," *Grimm v. City of Portland,* 971 F.3d 1060, 1067 (2020). *See United States v. Wright,* 46 F. 4th 938 (9th Cir. 2022) at footnote 9.

1. The Complaint Adequately Alleges a Basis for Alter Ego and Agent Liability.

Defendants correctly point out that Plaintiff's claims against Defendants, other than the Interference with Contract against Defendant Hodge, are derivative of Defendants' use of Le Nid *USA*, Inc. and LNCI as their alter egos. Defendants readily admit that "Delaportas is alleged to have been acting as Defendants' agent. Doc. 28-1 at 2; *see also* Doc. 1 at ¶8 ("Schuyler and Hodge lacked the experience in the food manufacturing, marketing and distribution business;  therefore, in or about early 2020's, they engaged one Steven Delaportas ...." *Id*. at ¶ 9 ("Schuyler was principally in charge of supervising Delaportas with respect to Crèmily Products' manufacture, quality control, packaging and presentation, while Hodge, as funder, was principally in charge of supervising Delaportas' business and financial management of the Crèmily Project"; *Id*. at 12(A)

Yet, Defendants claim that the alter ego allegations fail to state that Schuyler was the owner of Le Nid *USA*, Inc. This is incorrect reading of the Complaint. In ¶43, Plaintiff plainly alleges that "There was such a unity of interest and ownership between Le Nid USA, Inc. and Schuyler that it no longer existed as a separate entity…" and "[Le Nid USA, Inc. is] a members of the so called Crèmily – Le Nid Enterprise and share Schuyler as the common officer and director and Delaportas as the actual control person." *Id*. at ¶43(J).

16

The unity of interest and ownership between Defendant Schuyler and Le Nid USA, Inc. is properly pled.

    2.  <u>Conspiracy Between Schuyler, Hodge and Delaportas is Adequately Pled.</u>

The Complaint alleges that "Schuyler, Hodge and Delaportas shared a common plan and design to bring Crèmily Products to market. Accordingly, the fraud committed by any of them imposes liability on the other two."  Doc. 1 at ¶¶60, 65, 73, 80, 87. Defendants argue that they cannot be liable for conspiracy.

While "[c]ivil conspiracy is not a cause of action," it is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503, 510-511, 28 Cal.Rptr.2d 475, 869 P.2d 454 (1994). To properly plead a conspiracy cause of action, the plaintiff must allege "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." *Mox, Inc. v. Woods,* 202 Cal. 675, 677, 262 P. 302 (1927). The "agent's immunity rule" proscribes conspiracy claims between and against agents and their principals. *See Doctors' Co. v. Super. Ct,* 49 Cal.3d 39, 45, 260 Cal.Rptr. 183, 775 P.2d 508 (1989).

But the agent's immunity rule does not apply in cases where directors and officers of a corporation "directly order[], authorize[], or participate[] in the tortious conduct." *Wyatt v. Union Mortgage Co.,* 24 Cal.3d 773, 785, 157 Cal.Rptr. 392, 598 P.2d 45 (1979).

Here, "Schuyler and Hodge … engaged one Steven Delaportas *a/k/a/* Steven *Dellaportas* (hereafter "Delaportas") to organize and manage the Crèmily Project". Doc. 1 at ¶¶8, 9. "[Delaportas] was hired by Defendants Schuyler and Hodge to help him in the manufacture, sales and distribution of Crèmily Products". *Id*. at ¶12. Hodge directly ordered "Delaportas to enter the consulting agreement between Plaintiff and Le Nid USA, Inc. and stated to Plaintiff that this would be done "for accounting purposes"

only", *Id*. at ¶ 44, and directly "instructed Delaportas to stop making retainer payments to Plaintiff". ¶¶ 26, 43(F), 58, 85.

Further, "Schuyler and Hodge authorized [Delaportas] to execute a consulting agreement between Le Nid USA and Plaintiff". *Id*. at ¶13. "Schuyler… authorized Steven Delaportas to hold himself out as its CEO under the assumed name *Dellaportas* when in fact, Delaportas was not the CEO and his true name is not *Dellaportas"*. *Id*. at ¶43(H). Therefore, the "common plan" of structuring the Crèmily – Le Nid Enterprise, including Le Nid *USA* to fraudulently transfer assets and avoid liability is well pled.

### 3. The Complaint Adequately Alleges Fraud and Promissory Fraud.

Defendants argue that Plaintiff fails to allege Fraud or Promissory Fraud under Rule 9(b), principally focused on Plaintiff's allegations of "reliance". Defendants argue that as a matter of law, Plaintiff was not justified in relying on the statements by Defendants' agent Delaportas alleged in Paragraph 12 of the Complaint the representation that the Le Nid Consulting Agreement was secure by virtue of Hodge's investment,  ¶15, failure to disclose that Le Nid USA, Inc. was a mere shell company with no ability or intent to pay the $10,000 monthly retainer to Plaintiff, ¶16, that Le Nid USA, Inc. would be able to fulfill its contractual obligations to Plaintiff, ¶18, that Schuyler, LNCI and Le Nid USA, Inc. fraudulently conveyed their assets to a third party by filing a UCC-1 Financing Statement, ¶¶40-42, that Delaportas, "working at the direction of and in concert with Schuyler and Hodge made the following statements to Plaintiff: (A) That he (Delaportas) was the CEO of LNCI and Le Nid USA, Inc., (B) That Hodge funded the Crèmily Project with a $1B ($1,000,000,000) fund; (C) The Consulting Agreement had to be made between Plaintiff and Le Nid USA, Inc. and not between Plaintiff and LNCI 'for accounting purposes'; and that Le Nid USA, Inc.'s performance was secure and guaranteed with Hodge's funding of $1B."  "Defendants and Delaportas also "actively concealed the material fact that Le Nid USA, Inc. was insolvent and had no ability or intention to fulfill its contractual obligations". ¶51. *See also* ¶ 52-59.

18

Under applicable Arizona Law, entering into an agreement with no intent to perform is fraud. *Employer's Liability v. Lunt*, 82 Ari. 320, 313, P.2d 393, 324-325 (1957).

*Reliance* is a "state of mind" that may be alleged generally. *See* Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.") Beyond that, reliance was reasonable is an issue of fact. Plaintiff will be ready to disclose factors that made reliance on Defendants' misrepresentations, partial representations, and omissions reasonable.

4. <u>Defendants Schuyler and Hodge Are Derivatively Liable for Breach of the Le Nid *USA* Consulting Agreement and Subsequent Breach of the Settlement Reached.</u>

Defendants argue that neither Schuyler nor Hodge are derivatively liable for breach of the breach of the Consulting Agreement and the Settlement of the breach because they are not the alter egos of Le Nid *USA*, Inc., LNCI, and as principals of Delaportas. This issue was addressed above and needs no further clarification.

5. <u>The Complaint Alleges a Claim for Breach of Covenant of Good Faith and Fair Dealing With Respect to the Le Nid *USA* Consulting Agreement and Settlement Reached.</u>

Both the Le Nid *USA* Consulting Agreement and the Settlement Agreement are interpreted according to Arizona law. "The law implies a covenant of good faith and fair dealing in every contract," which is a duty that "arises by virtue of a contractual relationship." *Rawlings v. Apodaca,* 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* "The covenant of good faith and fair dealing may be breached even though the express covenants of the contract are fully performed." *Id.* at 163, 726 P.2d at 569. *See also Cavallo v. Phoenix Health Plans, Inc.*, 254 Ariz. 99, 518 P. 3d 759, 764 (2022)

19

Complaint alleges that effective January 1, 2023, Plaintiff and Le Nid *USA*, Inc. entered into a consulting agreement. Doc. 1 at ¶18-19. In the summer of 2023, Hodge accused Delaportas of fiscal mismanagement and demanded a restructuring of the workforce, management and operations of LNCI. *Id*. at ¶24-25. "Effective July 1, 2023, Hodge instructed Delaportas to cease making payments to Plaintiff." *Id*. at ¶26.

Delaportas, acting as Schuyler's and Hodge's agent, settled the breach on December 4, 2023. *Id*. at ¶35. As soon as the settlement was reached, Defendants and Delaportas breached it. *Id*. at ¶36.

On May 30, 2024, LNCI, Le Nid *USA*, Inc. and Kylie Schuyler, as debtors, recorded with the Arizona Secretary of State a UCC-1 Financing Statement, encumbering all their assets in favor of a secured party. *Id*. at ¶41. "Two days later, on Saturday, June 1, 2024, Delaportas and the entire Crèmily – Le Nid Enterprise vacated the offices at 6991 E. Camelback in Scottsdale and ceased operations." *Id*. at ¶42.

Defendants' actions above disclose how they "acted to impair" Plaintiff's contractual rights "to receive the benefits" of the January 1, 2023 Consulting Agreement and the December 4, 2023 Settlement.

6. Plaintiff's Allegations Against Hodge for International Interference With Le Nid *USA* Consulting Agreement is Well Pled.

California law provides that one of the elements of interference with *at-will* contracts argue that the Complaint fails to allege an independent wrongful act. *Ixchel Pharma, LLC v. Biogen, Inc*., 9 Cal.5th 1130, 1148 (2020). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Id.* at 1142.

Defendants argue that the annual Le Nid *USA* Consulting Agreement with automatic yearly extensions is an *at-will* Agreement and, consequently, Plaintiff is required to allege an independent wrongful act. The consulting agreement, however, is for a definite term of one year with extensions.

20

When a contract is for definite term, and the contract is terminable only under limited circumstances, "it [is] not an at-will contract but a contract with a definite duration". *NCWC Inc. V. Carguard Administration Inc*., 635 F. Supp. 3d 815, 827 (D.C. Ariz. 2022). Therefore, Defendants' factual premise and legal conclusions fail.

7. <u>The Identity of the Secured Party in Defendants' Fraudulent UCC Financing Statements is Known to Defendants as Debtors But Not to Plaintiff as Creditor; Plaintiff Will Add the Secured Party When Defendants Identify It.</u>

Defendants incorrectly assert the transferee in a fraudulent transfer case is the necessary party under Arizona's Uniform Fraudulent Transfer Act ("UFTA").  The remedies to a creditor, Plaintiff here, are extremely broad and encompassing. They include equitable remedies,  including "any other relief the circumstances may require". A.R.S. 44-1007(4). *See also* 44-1010 permitting supplemental  remedies.

Defendants argue that Plaintiff, as creditor, wishes to avoid the fraudulent transfer from Schuyler, as debtor, to CT Corporations System "as representative", as transferee, then CT Corporation "as representative" is a necessary party. *It is unknown, however, who the real transferee is.*

For longer than a year, Plaintiff has been requesting Defendants in the Arizona case, including Schuyler and Hodge, to *please* disclose the identity of the actual transferee, without success. Plaintiff met with nothing but delay, obstruction and excuses.

On this matter, Plaintiff respectfully requests that the Court permit the Complaint to stand, pending the disclosure of and the addition of the actual transferee through amendment. Plaintiff otherwise has no relief, as his only means of discovering the identity of the secured party is from Defendants themselves given they failed to make the disclosure in the UCC Financing Statement itself.

**V.    CONCLUSION**

21

For these reasons, Defendants' Motion should be denied. If, however, the Court determines that the Complaint does not fully and strictly comply with Rule 8(a) or displays other deficiencies, Plaintiff respectfully requests leave to amend.

RESPECTFULLY SUBMITTED this 23d day of February, 2026. .

By _____
Peter K. Strojnik (242728)
Attorneys for Plaintiff

## LR 11-6.2 Certificate of Compliance

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6984 words, which complies with the work limit of LR 11-6.1.

By _____
Peter K. Strojnik (242728)
Attorneys for Plaintiff

22